**William E. CODY, Plaintiff**

v.

**Arthur S. FLEMMING, Secretary of Health, Education and Welfare, Defendant.**

Civ. No. 1159.

United States District Court
N. D. Iowa, W. D.

Sept. 30, 1960.

Louis S. Goldberg, Sioux City, Iowa, for plaintiff.

F. E. Van Alstine, U. S. Atty., by William R. Crary, Asst. U. S. Atty., Sioux City, Iowa, for defendant.

BECK, District Judge.

The plaintiff, William E. Cody, is in this action seeking a judgment to reverse the decision of the Secretary of Health, Education and Welfare, finding the plaintiff not to have been an "employee" during the period June 1, 1955 until August 1, 1957, within Section 410(k) (2) of Title 42 U.S.C.A. and related provisions of the Social Security Act. Jurisdiction is invoked under Section 405 (g) of that Act as amended.

Error below, according to the complaint, is predicated on:

"The Referee's Decision" and the "Decision of Appeals Council" (the latter corrects, modifies, and supplements the former), are in the main indistinguishable as between "Findings of Fact" and argument and conclusion. To the extent that they make Findings of Fact, plaintiff states that none of the findings, is supported by substantial evidence; that the findings are contrary to the direct, positive, and uncontradicted evidence. Plaintiff further states

that the findings and the decision are contrary to law and to the Secretary's Regulations Section 404.1004 (c)".,

and on the claim that his statement in paragraph 8 of his complaint, under the record and rules which apply, was clearly established by the evidence introduced at the hearing before the Referee. That statement is as follows:

"For the convenience of the Court, we state the record in brief outline: Plaintiff was born in 1888. He practiced medicine as a physician and surgeon in Sioux City for about 40 years. In 1945 he associated Dr. Philip L. Bettler, also a surgeon, as a partner in his medical practice. They continued as partners until June 1, 1955. Plaintiff having suffered a heart attack and being in failing health and worn in spirit, he desired to be relieved of most of his duties as a surgeon engaged in heavy surgery and to be relieved of the administrative burden imposed upon him as a partner. He wanted to "quit" entirely; urged, however, by Drs. Bettler and Beye, he agreed to remain for a brief period provided it be on the less burdensome basis of an employee of a new partnership to be formed by Drs. Bettler and Beye. In the light of these considerations, the June 1, 1955 Employment Agreement was executed; his partnership ended; his status as employee began. Plaintiff voluntarily committed himself to that status, with all its legal incidents. The parties proceeded and conducted themselves in accordance with the Employment Agreement. Under that agreement and in the actual conduct of their affairs, the partnership-employer furnished the place to work, furnished the tools, had the right to discharge plaintiff for cause, and had the right to control and direct the plaintiff not only as to the results to be accomplished but also as to the details and means by which the result was to be accomplished; and those rights were actually exercised by the partnership, the plaintiff acceded to their exercise, consistently with the character of the services to be performed and the long professional experience and demonstrated capacity of the plaintiff for such performance. He conducted no practice of his own; he did not serve the public by the job; he served only the partnership-employer by the year and gave to it all his professional time; he received compensation only from that employer; his compensation was not measured by his services or by the fees he earned for his employer; he produced more than he received, the excess going to his employer."

These contentions, in the main, are challenged on the grounds: (1) that the facts on which the decision of the Appeals Council was based are in its findings and in the transcript; (2) that the plaintiff has no claim upon which relief can be granted under the terms of the Social Security Act as amended, the regulations thereunder promulgated and the record as disclosed by the transcript; (3) that the Findings of Fact are supported by substantial evidence; (4) that those Findings support the conclusions reached, and (5) that on such a record the demand under the defendant's motion for summary judgment for dismissing of the complaint and affirming of the Appeals Council's decision should be granted.

It is undisputed that the plaintiff, William E. Cody, and Drs. Bettler and Beye, on June 1, 1955, entered into a written agreement in the following form:

"June 1, 1955
Employment Agreement
Dr. Cody by Drs. Bettler & Beye

"Employment Agreement made and entered into at Sioux City, Iowa, this 1st day of June, 1955 by and between the medical partnership of Drs. Bettler & Beye, herein styled the firm, of the one part, and Dr.

Wm. E. Cody, herein styled Cody, of the other part.

"Witnesseth:

"1. Dr. Cody is now and for many years has been engaged in the practice of medicine at Sioux City, Iowa, and has enjoyed an extensive practice, for many years on his own account and for some ten years last past in the medical partnership of Drs. Cody & Bettler. By reason of age and some impairment of health, Dr. Cody desires to be relieved of major responsibility as a principal and desires to reduce his professional activity with a view toward eventual retirement. Accordingly he has elected to discontinue his medical partnership with Dr. Bettler. Dr. Bettler has formed a medical partnership with Dr. Beye, the firm herein named; and that firm desires to engage the services of Dr. Cody as associate physician, and Dr. Cody accepts such engagement, all on terms and conditions as follows:

"2. This agreement shall be in effect from and after June 1, 1955 until July 31, 1957.

"3. Dr. Cody agrees to devote a reasonable measure of his time to serve the professional practice of the firm. Dr. Cody shall himself determine the extent of his activity. All fees and emoluments from his service shall inure to the income of the firm.

"4. For such services Dr. Cody shall receive and the firm agrees to pay to him compensation computed as follows:

"For the period from June 1, 1955, to July 31, 1955, 20% of the net income of the firm, computed prior to any allowance for the services of the members of the firm.

"For the period from August 1, 1955 to July 31, 1956, 15% of such net income so computed.

"For the period from August 1, 1956 to July 31, 1957, 10% of such net income so computed.

"5. Net income for purposes of this agreement, to which the aforesaid percentages shall be applied shall be computed as follows:

"5.01 The books of account from and after June 1, 1955 shall be kept on a cash basis. From the gross amount of fees collected by the firm there shall be deducted all the costs and expenses of the partnership practice, including an appropriate deduction for depreciation on the equipment, in accordance with federal income tax requirements. Any questions remaining shall be resolved in harmony with generally accepted accounting principles and practices.

"5.02 It is understood that the firm as such shall have no financial interest in the professional fees earned by either of the partners or by the aforesaid discontinued medical group prior to June 1, 1955 and remaining unpaid at that date. Accordingly the gross income of the firm will consist of receipts for services rendered by the firm from and after June 1, 1955 only.

"5.03 In the interest of simplicity of computation, the firm being on a calendar year basis, the compensation of Dr. Cody shall be computed as follows: as to the year 1955, 20% of $\frac{7}{12}$ths and 15% of $\frac{5}{12}$th of the net income of the firm to December 31, 1955; as to the year 1956, 15% of $\frac{7}{12}$th and 10% of $\frac{5}{12}$ths of the net income of the firm for the calendar year 1956. For 1957, 10% of the net income of the firm for the period of seven months to end July 31, 1957.

"5.04 In the computation of net income, the firm shall bear appropriate costs as to Dr. Cody for transportation cost and expense, medical society dues, medical protective insurance, and attendance at professional meetings.

"6. Dr. Cody's compensation shall be subject to the customary payroll

deduction for withholding and other taxes.

"7. This contract is not and shall not be deemed to be a partnership agreement, and shall not constitute Dr. Cody a partner. Dr. Cody shall have no responsibility with respect to the debts or other obligations of the firm.

"Executed in triplicate at Sioux City, Iowa, the day and date first above written.

"_____

"Wm E. Cody, M.D.
"Drs. Bettler & Beye
"By _____
"Philip L. Bettler, M.D.
"By _____
"Cyrus L. Beye, M.D."

Conspicious, by its exclusion from that agreement, is the term "employee" defined in Section 210(k) (2) of the Act as any individual who, under the usual common-law rules applicable in determining the employer-employee relationship has the status of an employee and in Section 401.1004(c) of Title 20, Code of Federal Regulations covering "common law employees". The agreement, instead, speaks of the engagement of Dr. Cody "as an associate physician", remuneration is not referred as a fixed salary or a wage, but a percentage geared to the partnership income and the agreement, while it specifies that "Dr. Cody agrees to devote a reasonable measure of his time to serve the professional practice of the firm", leaves it to him to "determine the extent of his activity".

Such provisions are not expressive of an intention to demote Dr. Cody during the term specified to that of an employee of the partnership.

But there are others in the agreement which are not inconsistent with the alleged employee claim, such as the assumption of payment by the partnership of Dr. Cody's "transportation cost and expense, medical society dues, medical protective insurance, and attendance at professional meetings", customary payroll deductions for withholding and other taxes and the covenant against any inference of a partnership having been intended. But even here, the court finds no express declaration of an employer-employee relationship having been intended. At most it might be regarded as giving rise to an inference of such a status, which, however, has little significance or probative value, since the inferences from specifics, must yield to the overalls, gathered from the entire instrument.

The evidence at the hearing before the Referee, contained in the transcript, in the main being the plaintiff's own testimony, when considered in its entirety, impels like uncertainty, as to whether or not the parties actually intended the alleged relationship during the period fixed by the agreement. Indicative thereof, is Dr. Cody's absorbing of the expenses referred to in the agreemnt and his treatment of them as if he were self-employed, his testimony to the effect that the arrangement entered into, in part at least, was motivated by a hope on the part of the partners to hold the medical practice he had established during his forty years as a prominent surgeon in Sioux City, his testimony of his own relationship to the partnership not being essentially different from that of Dr. Beye while he served as an associate, his freedom in matters on consultations with other doctors and the undercurrent of reluctance, detected in all of his testimony relating to his stepdown from the position of authority to the position of obedient servant, even though it meant failure to substantiate the claim he had filed.

The court on a review of this kind is bound by the rule that the findings of the Referee as to any facts are conclusive, if from the entire record they are supported by substantial evidence. Section 405(g), Title 42 U.S.C.A.; Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 7 S.Ct. 456, 95 L.Ed. 456; United States v. Lalone, 9 Cir., 152 F.2d 43; Folsom v. O'Neal, 10 Cir., 250 F.2d 946, and Irvin v. Hobby, D.C., 131 F.Supp. 851. And in such cases the court may not substitute

its own judgment as to the facts even though in the first instance, it might have decided otherwise. Social Security Board v. Warren, 8 Cir., 142 F.2d 974; Universal Camera Corp. v. National Labor Relations Board, supra, and Thurston v. Hobby, D.C., 133 F.Supp. 205. Like degree of finality attaches to a board's inferences and conclusions when supported by substantial evidence, United States v. Lalone, supra; Carqueville v. Flemming, 7 Cir., 263 F.2d 875, and it is also held that interpretations of acts or statutes are entitled to great weight as such matters come on for review. United States v. Lalone, supra. Not to be forgotten in a matter of this kind is the rule that remedial legislation, such as the Social Security Act should favor coverage and not exemption. Willard v. Hobby, D.C., 134 F.Supp. 66. As said by Justice Cardozo in Helvering v. Davis, 301 U.S. 619, at page 641, 57 S.Ct. 904, at page 909, 81 L.Ed. 1307:

> "The hope behind this statute (the Social Security Act) is to save men and women from the rigors of the poor house as well as from the haunting fear that such a lot awaits them when journey's end is near."

Also to be mentioned and to be applied is the rule that the burden of proof rests upon the one who files a claim with an administrative agency to establish that the required conditions of eligibility have been met. Norment v. Hobby, D.C., 124 F.Supp. 489; and Thurston v. Hobby, supra.

But the court as it gives effect to all of these rules and the record, finds it not difficult to hold that the findings of the Referee which were affirmed on appeal, are supported by substantial evidence, that the conclusions reached are supported by those findings and that the decision by the Appeals Council that the claimant, William E. Cody, is not entitled to the old age insurance benefits, should be affirmed. It is so held.

Counsel for the defendant is hereby directed to prepare appropriate form judgment and submit it to the court for its approval.