Elmer J. TUCKER and Hannah Tucker,
Plaintiffs,

v.

Anthony J. CELEBREZZE, Secretary of
Health, Education and Welfare,
Defendant.

Civ. No. 1204.

United States District Court
N. D. Iowa, W. D.

Aug. 5, 1963.

Warren G. Dunkle, Sioux City, Iowa, for plaintiff.

Donald E. O'Brien, U. S. Atty., Sioux City, Iowa, for defendant.

HANSON, District Judge.

This is an action under 42 U.S.C. § 405(g) to review a final decision of the Secretary. Elmer J. Tucker and Hannah Tucker are the parents of Arnold E. Tucker. Arnold E. Tucker was killed August 14, 1957. This is admitted. The said parents are claiming Social Security benefits based on the work record of their son, the said Arnold E. Tucker, deceased.

42 U.S.C. § 402(h) (1) provides that the parent of an individual who died fully insured may, upon reaching retirement age, become entitled to parent's insurance benefits on the Social Security account of the deceased child if (inter alia) such parent was receiving at least one-half of his support from the child at the time of the child's death.

The parents claim that each of them were receiving at least one-half of their support from decedent during the twelve months prior to their son's death. This is denied by the defendant.

Upon a hearing before the Hearing Examiner, Eva L. Newman, it was the decision of the said Examiner that the parents were receiving at least one-half of their support from their deceased son, and that upon reaching retirement age, they would become entitled to parents' insurance benefits upon the work record of said Arnold E. Tucker, deceased.

The Appeals Council, on its own motion, reviewed the decision and reversed the Hearing Examiner. They found that the parents were not receiving one-half of their support from their deceased son, Arnold E. Tucker.

■■ The findings of fact made by the Secretary, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405 (g). The conclusions of law made by the Secretary are not binding. Celebrezze v. Bolas, 316 F.2d 498 (8th Cir. reversing D.C. of Neb.)

The plaintiffs, the parents, claim that the finding that the parents were not receiving at least one-half of their income from their deceased son at the time of his death is not supported by substantial evidence.

Plaintiffs also claim that the referee's finding as to credibility should be followed rather than the findings as to credibility made by the Appeals Council. Plaintiffs claim the Appeals Council made an error in law in reaching their findings of fact because they presumed that the brother had to support his sister.

The Appeals Council found:

(1) That the claimants were not receiving one-half of their support from the wage earner at the time of his death. (It is stated that the finding is based on the findings of the Hearing Examiner).

(2) That the claimants have not maintained the burden of establishing by reliable evidence that they were receiving one-half of their support from the wage earner at the time of his death. (This finding was based on the credibility of

the witnesses and lack of specificity in the evidence.)

The only issue is whether there is substantial evidence to support the findings. This decision necessitates a discussion of the evidence relied upon by the Appeals Council first and then a discussion of the other evidence, if any, in the record which would support the Appeals Council.

It is clear that the Appeals Council's findings are given less weight in a case where they reject the Hearing Examiner's findings than in a case where they sustain the Hearing Examiner's findings. Heikes v. Flemming, 7 Cir., 272 F.2d 137; In Re United Corporation, 3 Cir., 249 F.2d 168; Universal Camera Corporation v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. In such a case in determining the substantiability of the evidence in the record, the Hearing Examiner's report must be considered. P. 178 of In re United Corporation, in 249 F.2d. This is even more important where credibility is involved. Heikes v. Flemming, 272 F.2d p. 139, approved the District Court's determination that the Referee's findings shall be followed where credibility is involved rather than the findings of the Appeals Council. (168 F.Supp. 675, 679, of the District Court opinion.)

The Examiner and the Council used income and expenses for a period of one year prior to the deceased's death to determine the issue of support. This was from August 14, 1956, to August 14, 1957. It should first be stated that the courts have never required this determination period to be an inflexible one. The idea is to determine whether at the time of death there was support amounting to more than half being given, or to state it another way, whether the death caused a loss of more than one-half of their support. It is the support at the time of death that counts but it is impossible to achieve a mathematical determination without going back for some period before death and adding up the contributions and expenses. See Baetich v. Hobby, 2 Cir., 212 F.2d 480; Zugg v. Folsom, D.C., 140 F.Supp. 806; Mocogni on Behalf of Lyons v. Hobby, D.C., 126 F.Supp. 472; Spencer v. Flemming, D.C., 188 F.Supp. 517; Dowell v. Folsom, D. C., 157 F.Supp. 46; Stephens v. Federal Security Administrator, D.C., 121 F. Supp. 120; Hupp v. Celebrezze (N.D. Iowa, 1962), 220 F.Supp. 463.

The Examiner and the Council used a period of one year prior to the death of the deceased and this Court is considering that as a reasonable period of time to use. Probably the time test as to whether a sum of money should be considered support is whether it would be likely to recur in the future. See Schroeder v. Hobby, 10 Cir., 222 F.2d 713.

The Hearing Examiner concluded:

(1) That the cost of support of each individual in the family was $419.34. (The Examiner recognizes this is not completely correct because it includes an amount which should be allocated as an expense in keeping up the claimants' store (see Exhibits B and C and pgs. 146 and 147 of the record) and it does not include clothing, medical or dental expenses, and other personal items);

(2) That the deceased wage earner's net contribution was $550.00;

(3) That total other income used for the parents' support did not exceed $485.00. (This is probably an error in law in that the $50.00 earned by the claimants' daughter, should have been added in, but this would not have changed the result. This family consisted of the parents, one minor daughter, and the now deceased son. The reason for this would be that the parent is entitled to the services of the minor child and also that no part of the $485.00 or the $550.00 was allocated to the support of the daughter.) This $485.00 constitutes income from the parents' store, rent earned, and wages.

Based on this, the Examiner found that the $550.00 exceeded the $485.00 and thus concluded that the deceased contributed over half of the support of the parents. (It would also be over half if

the $50.00 is added to the $485.00.) The Appeals Council also finds these to be the conclusions and findings of the Examiner. However, the Appeals Council reversed the Examiner. On page 5 of the Appeals Council's decision, it points out that the estimated expenses exceed the estimated income. It concludes from this that the excess expenses must have been paid by income received from some source other than the deceased son. It points out that when only the income received from the son and the income received from other sources are considered, the expenses shown by the Examiner exceed this income by $192.00. It concludes that the amount came from a source other than the deceased son. ($50.00 of it came from the daughter.) If this $192.00 is considered to come wholly from sources other than the deceased, then the amount received from the deceased is not more than one-half of the support of the parents. Whether this conclusion is supported by the evidence is the first issue in this case.

The other issue, which is related to the first one, is whether a part of an inheritance of Hannah Tucker was used during the relevant period as support for the parents. The Examiner found that the inheritance was not used during this period as part of the support.

Before deciding these issues, it is necessary to comment on some other parts of the Appeal Council's opinion. Starting half way down page 5 and ending with the start of the first full paragraph on page 6, the Council analyzes another supposed reason why the deceased did not contribute more than half of the support of the parents. It first sets forth the figures used by the Examiner in her decision. These figures are correct except for the figure $513.01. The Examiner did not use that figure. (Apparently, this was an error and the Council meant to use the figure $531.01 which would be correct. It is also correct in that it added in the $50.00 contributed by the daughter.) The Council states as follows: that the cost of support of the parents would be $838.68. (This is twice the

figure $419.34 or one-half of the figure $1,677.36. At any rate, it is subject to that margin of error that admittedly exists in the figure $1,677.36.) This may be the right figure to use but the rest of the reasoning on the point is a legal error.

The Council then states that the amount of contribution from sources other than the deceased is $513.01 ($531.01) and is over half of the figure $838.68 and from that it follows that the deceased did not contribute over one-half of the support of the parents. The error is that part (supposedly one-third) of the $513.01 ($531.01) should be allocated to the support of the daughter. When this is done, the amount received from sources other than the deceased son does not exceed one-half of the figure $838.68.

On page 6, when the Council approaches the problem from the other standpoint, it makes the same error as it divided the figure $513.01 ($531.01) by two when it should have been divided by three. This was a clear error, but it does not end the matter. The Appeals Council will be upheld if it can be supported on another basis.

The way the Appeals Council figured this was that the contribution from the deceased went to support the daughter instead of the parents and it reasoned that the parents used all their other income, including the $50.00 from the daughter, to support themselves. It reasoned that no part of this $531.01 went to the support of the daughter.

There are a number of what may be termed findings which were made by the Council and which bear on the first issue. The Council said:

(a) "It appears that the wage earner's contributions were generally toward clothing and groceries and that the other expenditures must have been made from other sources of income of the claimants. This would mean that the claimants' income from other sources would be increased." The Council is reasoning this way because the clothing, medical and dental care, and other personal expenses

are not included in the expense figure of $1,677.36 shown by the Examiner.

The Court will re-examine the evidence only to point out the obvious errors in reasoning:

(1) Clothing was a non-listed item and the Council found that the deceased furnished that item. This would tend to show that the contribution by the deceased should be increased.

(2) The Council here apparently finds most of the rest of the deceased's contribution went to groceries but earlier in the opinion, it indicated that it felt this would come from the store.

Before this would be evidence that the income from other sources should be increased, it must be at least possible to infer that it was more probable that the expense money came from sources other than the deceased than that it came from the decedent's contribution.

(b) The Council felt that the amount of the expense which would be attributable to the store would be insignificant. (There is only $142.00 worth of expenses to explain away so that the estimated income would equal the estimated expenses.) The Council stated that there was no evidence as to what amount of the expenses (taxes, water, telephone, gas and electricity) could be attributed to the store. This was not so, e. g., see Exhibit 33, page 132 of the record.

(c) The Council found that it would not be realistic to believe that the deceased could have contributed more than $1,000.00. It was not claimed that he contributed $1,000.00, but rather that he contributed $1,000.00 less the cost of his food and lodging. His Iowa income tax return showed that he earned $2,353.90 of taxable income in 1956. Also, he drew unemployment compensation in the amount of $427.75. He maintained a 1951 car and was not married.

Before the issues raised in this memorandum can be decided, it is necessary to comment on some of the statements made in the Council's opinion which relate to the evidence.

On page 2 starting with the second paragraph, the Council outlines the evidence as to the income of the deceased. This shows it was about $2,500.00. The $2,000.75 was earned during the one year period. Also part of the $1,106.70 was earned during this period. The $1,106.70 covers the wages for the months of July, August, and September of 1956. Half of August and all of September came within this period.

In the second full paragraph from the bottom of that page, the income of the father, Elmer J. Tucker, is discussed. The Council states: "Mr. Tucker also alleges that only $36.01 of $366.17 reported to his social security earnings account for the calendar quarter ending September 30, 1956, was received in the year period involved." This was established also by an affidavit signed by Mr. Tucker's employer.

The next paragraph shows the income from the store. $350.00 seems a high estimate of the profit when the sales tax returns are considered. There is no direct evidence that the groceries taken from the store constituted profit. However, the Court will not say that this figure is not supported by evidence.

The first two full paragraphs on page 3 are concerned with the inheritance which has already been considered.

The first paragraph on page 4 is concerned with the wage earner's contribution and the contribution from the store. When the Council says that the wage earner contributed $1,000.00, this is misleading as already explained. The car he maintained was a 1951. The Council apparently felt it was questionable that he could contribute $550.00 out of an income of about $2,500.00. The only evidence they give for this is that he maintained this car, purchased clothes for himself and made only the sum referred to. The issue is whether this evidence is sufficiently substantial to disregard the estimates of support which were made by the claimants.

Part of the first paragraph on page 4 discusses the store. The Council seemed

to think that it was reasonable to figure that the groceries used by the claimants were purchased from the store. Exhibits B and C show this store. This issue is whether it is possible to find it more probable that they purchased the groceries for their house when they purchased groceries for the store or whether it could be found to be more probable that they took all their groceries from the store. To support this conclusion, it would have to be possible that the profit from the store could exceed $350.00.

The second issue is whether the evidence pertaining to the inheritance supports the finding of the Council that an amount of approximately $1,500.00 or an amount of $3,200.00 was expended for which there is no explanation. The evidence on this that is in the record is: In March 1955 the mother received an inheritance of approximately $8,000.00. ($8,715.77 less a $600.00 attorney fee.) Both parents signed a statement that they spent only $3,200.00 of this from August 14, 1956 to August 14, 1957 to buy and fix up another house. (This is not considered support but the rent from the house, $70.00, was considered support.) On Exhibit A-C-1, Hannah Tucker again said the money was used only to buy and fix up the house. However, their joint bank account on August 14, 1957, showed only an amount of $3,213.-14, and the Council felt it should show a figure of $4,200.00. ($8,000.00 less $3,200.)

The question is not what does this evidence mean to this Court but rather the question is whether this amounts to substantial evidence to support the finding of the Council. Clearly, the Council was wrong when it said $3,200.00 was spent from this fund for which there is no explanation. The Council may be right in its conclusion that approximately $1,500.00 ($1,586.86) was expended for which there is no explanation on the record.

Since the inheritance was received in November, 1955, and the period which the Council used to determine the support did not begin until August 15, 1956, the missing money is circumstantial evidence, not direct evidence, that the money was spent during the relevant period. It is possible it was spent during this period but is there evidence to show that it is more probable that it was spent during this period than any other period? That is the question.

The Court must now discuss the meaning of the phrase "substantial evidence." This is discussed in Section 29.02, Administrative Law Treatise, Davis. Perhaps the best statement showing what "substantial evidence" means is a quote from Judge Frank in Orvis v. Higgins, 180 F.2d 537, 540 (2nd Cir. 1950):

"A wag might say that a verdict is entitled to high respect because the jurors are inexperienced in finding facts, an administrative finding is given high respect because the administrative officers are specialists (guided by experts) in finding a particular class of facts, but, paradoxically, a trial judge's finding has far less respect because he is blessed neither with jurors' inexperience nor administrative officers' expertness."

█ It shows that the administrative ruling is to be upset only if it would have been taken from the jury and the administrative ruling is given more deference than a judge's finding on the facts normally would be given. In other words, the clearly erroneous test is not to be used. In this case, it is the Appeal Council's opinion and not the Examiner's decision that is being reviewed. The examiner was reversed by the Council. Therefore, the Council's findings on credibility are not given the weight which would be given to them in a case where the examiner was affirmed by the Council. It is clear also that both the evidence supporting the existence of a fact and the evidence supporting the non-existence of a fact must be considered in determining whether there is substantial evidence to support the fact. In the words of the Administrative Procedure Act: "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Universal

Camera Corporation v. N.L.R.B., supra. In this way, the review of a jury or the determination of whether or not to submit a case to the jury is different. In reviewing a jury case, the court said in Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497: "It is the established rule that in passing upon whether there is sufficient evidence to submit an issue to the jury we need look only to the evidence and reasonable inferences which tend to support the case of a litigant against whom a peremptory instruction has been given."

In Cody v. Ribicoff, 289 F.2d 394, 88 A.L.R.2d 970 (8th Cir. reversing D.C. N.D. of Iowa, 187 F.Supp. 749), the Court accepted the rule from the Universal Camera Corporation v. N.L.R.B. case, supra, to the effect that "The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." In the Cody case, the factual issue involved a finding as to whether a physician was an employee. The case came under 42 U.S.C. § 405(g). The rule was also used in Celebrezze v. Bolas, supra. The same rule was applied in Underwood v. Ribicoff, 4 Cir., 298 F.2d 850. The Council cannot disregard the overwhelming evidence, and base its decision on thin contrary inferences.

The point referred to as the second issue will be considered first as it is the most difficult. This raised a question of circumstantial evidence. If there is not a basis to find that it was more probable that this unaccounted for sum was spent during the time after August 15, 1956 than that it was spent before August 15, 1956, the inference is not supported by substantial evidence.

The Examiner, who would be the one who would judge the credibility, found that it was not spent for support after August 15, 1956. The claimants signed sworn statements that the money was used during the relevant period only to buy the house and fix it up. Hannah Tucker, the mother of the deceased, signed two such statements. This would certainly detract from this circumstantial inference. The Examiner who heard the evidence apparently thought the statements of the claimants should prevail over the inference. If this were the finding to be upheld, there wouldn't be any question. The evidence supporting the inference that it was spent during the relevant year is that the statement shows it was deposited during the relevant year. However, it wasn't received during that year. This could be the mistake.

There are a number of possibilities in explaining the missing money. First of all, the bank account which shows the figure of $3,213.14 (and gives rise to the question of where the rest of the inheritance is) gives no indication that it was representing the inheritance. Neither does it indicate that they do not have another bank account. The statement showing that the $8,000.00 was deposited and $3,200.00 withdrawn during the period does not show that it is the same bank where the joint savings account is. Probably they would use the same bank although maybe Hannah didn't keep her inheritance in the joint account which showed only $3,213.14.

The Court feels that the inference, in view of the fact that there are many possible explanations for it, would not raise a jury issue when viewed with the sworn statements. Especially, it would not constitute substantial evidence when the claimants' statements contradict it and when the Examiner, the only one who could judge their credibility, believed that their statements were correct.

What has been called the first issue in this case is whether or not the Council was justified by the evidence in finding that the claimants' income from sources other than the decedent and the inheritance had to be increased to a figure greater than the figure constituting the contribution from the decedent.

The finding was based at least in part on the circumstantial inference arising from the fact that the estimated expenses were greater than the estimated income. The Court wholly accepts the finding made both by the Examiner and the Council that the expenses exceed the

estimated income by $142.00. The only issue is whether these expenses were actually paid for by contributions from the deceased or whether they were paid for by income from other sources. The Examiner found they were paid for by the deceased and the Council found that they were paid for by income from some source other than the deceased.

The Council felt it was unrealistic to feel that the income came from the deceased. There is no evidence in the record, substantial or otherwise, to support this. He earned about $2,500.00. He had a 1951 car. He lived at home. He was unmarried. He purchased some clothes. This is not evidence that it was unrealistic that he might have contributed $700.00 instead of $550.00.

It is not possible to find that the income of the father was greater than the record shows. The Appeals Council did not find his income was greater than the $36.01 plus $25.00.

It is not possible to find that the income from the store was greater than $350.00. It is doubtful that the evidence would support this high a figure. The sales tax figures and their estimated mark-up would support only a figure of approximately 15% of $1100.00 or $165.00. There is doubt as to whether the $70.00 rent figure should be reduced to $30.00. The Court, therefore, feels that it is not possible that the income came from sources other than the deceased and the inheritance and that there is no substantial evidence to find that it was more probable that these extra expenses were paid for by the income other than from the deceased or the inheritance, and that they were paid for by contributions from the deceased.

The Court, therefore, finds that the Council's finding to the effect that the income from other sources exceeded the income from the deceased is not supported by substantial evidence.

The Council made a second finding. That is that the claimants did not carry their burden of proof to the effect that the deceased contributed over half of the support of the claimants, the parents. Just about everything conceivable in the way of evidence that could be used to support their claim was introduced in this case. There are 78 pages of exhibits in the record consisting of 35 separate exhibits. The number means little, but the Court feels that little more in the way of evidence was possible. The Council may feel an estimate isn't evidence, but that would be error. No case must be proven to an absolute certainty. The issue is raised because the expenses exceeded the estimated income. The question is did they introduce enough evidence to support a finding that it was more probable that these other expenses were paid for by the deceased than from some other source.

One Circuit Court has said that if there is only a slight preponderance of evidence on one side or the other, the Secretary's findings must be affirmed. This would amount to changing the normal burden of proof. The Court of Appeals for the Eighth Circuit has not indicated such an approach and has had the opportunity to do so.

The determination of the presence of substantial evidence is to be made on a case to case basis. Celebrezze v. Bolas, supra; Celebrezze v. Wifstad (8th Cir. 1963) 314 F.2d 208; Hoffman v. Ribicoff, 305 F.2d 1 (8th Cir. 1962).

If it only refers to weighing the evidence on both sides, of course this is the duty of the Secretary, but the rule to follow is the substantial evidence rule. To change the burden of proof in favor of the Secretary would seem to fly in the face of the rule that the Act is to be construed liberally as a remedial statute. Celebrezze v. Bolas, supra. It would also seem to go against the Administrative Procedure Act and the Universal Camera case. It would seem that a claimant should be allowed to establish his case by a preponderance of the evidence. At any rate, the Court doesn't believe that any rule changes the statute so that over half must be found to read more than slightly over half.

In the present case, the Court feels that the inheritance money was not used for support. The Examiner found this to be so, and there is no substantial evidence to find otherwise. The Court has found that there was no evidence that any other income not from the deceased can be increased above the figure $531.01. Therefore, the only conclusion is that it is most probable that if there were additional expenses, they were paid for by the deceased. This was the conclusion of the Examiner and the Court finds this conclusion to be supported by substantial evidence.

It is, therefore, hereby ordered that the decision of the Appeals Council is reversed and the decision of the Examiner awarding social security benefits to Elmer J. Tucker and Hannah Tucker is reinstated.