Edward E. HALEY, Appellant,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare, Appellee.

No. 8154.

United States Court of Appeals Tenth Circuit.

Oct. 6, 1965.

Ronald G. Raynolds, Tulsa, Okl., for appellant.

Hugh V. Schaefer, Tulsa, Okl., for appellee.

Before PICKETT and SETH, Circuit Judges, and DOYLE, District Judge.

WILLIAM E. DOYLE, District Judge.

The action herein was instituted in the district court pursuant to Section 205(g) of the Social Security Act to review the ruling of the Secretary denying petitioner's application for a period of disability. The district court affirmed without comment the Secretary's decision which in turn was based on elaborate findings and conclusions issued by the Appeals Council of the Social Security Administration. The latter body had upheld the conclusions of the trial examiner that appellant was not entitled to disability benefits or the establishment of a disability period under Sections 216(i) and 223 of the Act.[1] The applicant has appealed from the final judgment of the district court. He seeks review of the proceedings before the trial examiner and the Appeals Council.

The scope of review in this court is, of course, limited. Our inquiry is whether the decision of the Appeals Council, which in legal effect is the decision of the Secretary, is supported by substantial evidence.[2] The review here is not, however, restricted to whether the district court misapprehended the sub-stantial evidence test.[3] On the other hand, a trial de novo in which our findings would be substituted for those of the Council supported by substantial evidence is impermissible.[4] Substantial evidence means evidence sufficient to justify a refusal to direct a verdict in a jury case against the party having the burden of proof.[5]

Prior to the disability complained of applicant had worked for thirty-two years as a bricklayer, a trade which he had learned from his brother at the age of sixteen. At the time of the filing of his application on March 12, 1962, he was fifty-five years of age. He claimed disability because of severe hemorrhage of the nose and tumors on his back. He fixed the date of onset as April, 1961. He has had no training other than that of bricklayer and has had little education. He did not finish the second grade and although able to print his name, his ability to read is limited.

Claimant suffered a severe nosebleed on April 1, 1961, following which he was hospitalized for fourteen days. There were recurrences of nose bleeding and loss of weight, and on March 9, 1962, applicant stopped work altogether. The evidence showed that he performed light household chores up to the time of the hearing. The medical evidence presented to the referee consisted of some hospital reports and a report of a visit from a representative of the Secretary, together with the reports of three physicians. None of this evidence was remarkable except that one of the doctors reported a left ventricular enlargement and one of the physicians to whom the applicant was referred found that there was no evidence of cardiac disease but there was some indication of infection in the urinary tract. The trial examiner's findings recognized all of the conditions diagnosed by the several doctors, including chronic

1. Title 42 U.S.C.A. §§ 416(i), 423.

2. Livingstone v. Folsom, 3 Cir., 1956, 234 F.2d 75, 77.

3. Ward v. Celebrezze, 5 Cir., 1962, 311 F. 2d 115.

4. Thomas v. Celebrezze, 4 Cir., 1964, 331 F.2d 541.

5. Dowling v. Ribicoff, S.D.N.Y., 1960, 200 F.Supp. 543.

prostatitis and a possible arteriosclerotic heart condition. The trial examiner concluded that existing impairments did not constitute a sufficiently substantial disability to preclude gainful employment within the meaning of the Act. On the other hand, the examiner's opinion was devoid of conclusion as to the type of work which the applicant might perform.

While the matter was pending before the Appeals Council additional evidence consisting of six medical reports was submitted. In two of these there was a diagnosis of angina pectoris, although there had been no electrocardiogram confirmation. It also appeared in these additional reports that the applicant was taking nitroglycerin pills to alleviate periodic chest pain.

■ In upholding the referee's decision the Appeals Council first found that the applicant was an "unreliable historian" and found generally that the complaints regarding chest pains were too unreliable to support a medical diagnosis of angina pectoris.[6] Apparently, the Appeals Council was dissatisfied with the several medical reports because in reaching its negative conclusion on the presence of angina pectoris it made its own diagnosis. It did this by consulting two medical text books. From the symptoms disclosed it concluded that applicant did not have cardiac disease. Its diagnosis reads in part as follows:

"Indeed the weight of the medical evidence does not disclose any objective evidence of cardiac disease. While claimant has early arteriosclerotic changes of the aorta, Grade 11 (i. e., moderate) retinopathy (i. e., arteriosclerotic changes in the fundi), and mild cerebral of arteriosclerosis, this does not denote cardiac disease. 'The finding of arteriosclerotic radial arteries or of atherosclerosis of the aorta, lower extremities, or of the retinal vessels does not denote that coronary heart disease is also present. The mere

existence of "arteriosclerosis", a normal degenerative condition characteristic of the process of growing older is not disabling, especially where it is only mild or moderate in degree, as in the instant case, and does not imply that claimant cannot work."

After concluding that the evidence was insufficient to support a conclusion that the applicant had a cardiac disease, the Appeals Council nevertheless assumed *"arguendo"* that there was a cardiac impairment, but held that notwithstanding its existence the applicant was not suffering a disability. On this subject the Council said:

"Assuming, *arguendo* only, that claimant has a cardiac impairment, many industrial and government studies (reported in various publications) bear out the conclusions that the claimant is able to engage in some type of work even taking into consideration his age, employment background, and the fact that he has not had more than 2 years of formal education. All of these investigations have found many types of jobs capably filled by persons with cardiac impairment."

■ Therefore, since the Appeals Council's disability decision is not based on its "diagnosis" but rather is based on the assumption that the claimant actually had a cardiac impairment, the bringing in of medical text books and a disregard of the opinion evidence of the doctors does not of itself require a reversal. It is noteworthy, however, that the Council failed to fulfill the requirements of its own regulations. 20 C.F.R. 404.949 permits the Secretary to consider documents not presented to the trial examiner. However, he must give due notice to the claimant that such additional evidence has been received. In the case at bar there is no indication that he gave the applicant any opportunity to refute the material which the Appeals Council consid-

6. Questions of witness credibility are for the examiner. Tucker v. Celebrezze, N.D.Iowa, 1963, 220 F.Supp. 209.

ered which was derived from the medical texts. We are not here questioning the validity of the secretary's receiving additional documents.[7] The particular material that was here employed could not, aside from its being incompetent, have any probative value. This is due to its general nature. It violates the requirement that the evidence relate specifically to the individual applicant.[8]

 The other conclusion of the Appeals Council, that there are in existence available jobs which the applicant is physically able to perform, is also unsupported by the evidence. Here again the Council, in the dearth of evidence or findings on this subject by the referee, consulted such general texts as the Dictionary of Occupational Titles and a 1957 Department of Labor publication entitled "Worker Trait Requirements for 4,000 Jobs." Use of these general text materials in the present circumstances was erroneous. Since this is the only evidence in support of the Secretary's conclusion that job opportunities existed for the applicant we are required to hold that this part of the Secretary's decision is entirely unsupported. We recognize that the evidence need not show existence of a particular available job or position; at the same time, the mere theoretical ability of the applicant to engage in some activity is clearly insufficient.[9]

Our decision in the instant case is further compelled by our view that once the claimant has shown inability to perform his usual vocation, the burden falls upon the Secretary to show the availability of suitable positions.[10]

In view of the lack of evidence to support the Secretary's conclusion that available jobs or positions existed which the applicant was capable of performing, the cause must be reversed and remanded for the taking of additional evidence as to the ability of the applicant to perform substantial gainful employment as of the date that he ceased work.

Therefore, the judgment of the district court is reversed with directions to remand the case to the Secretary for further proceedings consistent with the views expressed herein.

---

7. See Graham v. Ribicoff, 9 Cir., 1961, 295 F.2d 391, and Dvorak v. Celebrezze, 10 Cir., 1965, 345 F.2d 894.

8. See Dvorak v. Celebrezze, supra.

9. Kerner v. Flemming, 2 Cir., 1960, 283 F.2d 916.

10. Paul v. Ribicoff, D.Colo., 1962, 206 F.Supp. 606; Staab v. Ribicoff, D.Colo., 1962, 208 F.Supp. 31.