William TRUJILLO, Plaintiff,

v.

Wilbur J. COHEN, Secretary of Health,
Education and Welfare, Defendant.

Civ. A. No. C–1088.

United States District Court
D. Colorado.

Oct. 2, 1969.

Kripke, Hoffman, Carrigan & Dufty, P. C., by Kenneth N. Kripke, Denver, Colo., for plaintiff.

James L. Treece, U. S. Atty., and Gordon L. Allott, Jr., Asst. U. S. Atty., Denver, Colo., and Lawrence R. Ambush, Atty., Dept. of Health, Education, and Welfare, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

The plaintiff, William Trujillo, seeks review of a final decision of the Secretary of Health, Education and Welfare denying him disability benefits under the Social Security Act. His suit is brought pursuant to 42 U.S.C.A. § 405(g). The Court's function under this Act is to ascertain whether the findings of the Secretary are supported by substantial evidence.[1]

A hearing was held before an examiner of the Social Security Administration on April 19, 1968. The hearing examiner denied plaintiff's claim for a period of disability. He found plaintiff was not under a disability within the definition of the Act:

> The evidence fails to establish that the claimant's impairments, singly or in combination, prevented the claimant from working and engaging in substantial gainful activity for a continuous period which lasted or could be expected to last at least 12 months. Record, p. 16.

Plaintiff requested review of the hearing examiner's decision by the Appeals Council of the Social Security Administration. The Council determined that the examiner was correct, and as a result the examiner's findings and conclusions became the final decision of the Secretary.

The evidence presented showed that plaintiff had an eighth grade education. His longest period of continuous employment was thirteen years as a process foreman, mixing dog and cat food. He then spent three and one-half years as a metal sorter in a junk yard, and less than one year as a press operator. He has been unemployed since June 1966.

Between July 1966 and February 1968, Dr. James Case, an internist in the outpatient clinic at Denver General Hospital, examined the plaintiff five times. Dr. Case testified at the hearing and said that the plaintiff has had approximately six to eight epileptic seizures per year since 1966.[2] Dr. Case at one point stated that Mr. Trujillo was unable to engage in gainful activity due to uncon-

---

1. The term "substantial evidence," as used in the Act, means substantial evidence on the record as a whole. Weaver v. Gardner, 394 F.2d 111 (6th Cir. 1968); Moon v. Celebrezze, 340 F.2d 926 (7th Cir. 1965). Thus, if the Secretary could have reasonably come to the conclusion which he did in light of the entire record, his decision must be affirmed. Universal Camera Corp. v. National Labor Relations Bd., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Staab v. Ribicoff, 208 F.Supp. 31 (D.Colo.1962).

2. Plaintiff estimated that he had suffered 15 to 20 seizures in the past four years.

trolled epilepsy (Exhibit 19) and that at the time of hearing he was unemployable. Dr. Case conceded, however, that the plaintiff could function properly between seizures, although he was not qualified to work around heavy machinery. Record, p. 44.

Dr. Charles Harbin, a psychiatrist at Denver General Hospital, examined the plaintiff on July 13, 1967 (not in connection with the instant controversy). He submitted a written report which noted the fact that plaintiff had an epileptic condition and emotional difficulties, but stated that his functional limitations were "mild to moderate." The examiner considered the report from this physical. He did not testify nor did he express an opinion as to plaintiff's ability to engage in a gainful occupation.

In addition, Dr. Case referred to a psychiatric report prepared by Dr. John Duboczy (Exhibit 26) which showed that plaintiff had a chronic depressive reaction. Dr. Case stated that a chronic depressive reaction, in and of itself, may not be disabling, but that it might be a factor when taken in conjunction with plaintiff's other impairments.

The testimony also revealed that the plaintiff had received a gunshot wound in his left wrist in 1967, the treatment for which resulted in a fusion of the wrist. Although there is residual stiffness in the wrist, plaintiff can move his arm and fingers, and this, according to Dr. Case, did not amount to a disability.

The epileptic condition, along with the fusion in the left wrist and the nervous disorder are then the medical factors appearing in the record upon which plaintiff now bases his claim for disability benefits.

The Secretary offered the testimony of Dr. Dorothy Martin, a psychologist and vocational expert, as to plaintiff's vocational abilities. She said that although plaintiff should avoid work around dangerous machinery, water, or high places, and that he should not work alone, that he nevertheless could perform several types of work which are available in the Denver area, including removal of parts from old automobiles in a junk yard; dishwasher; counterman in a cafe; carhop; many jobs in food preparation (e. g., preparing salads); throwing bundles of newspapers from a delivery truck; and janitorial work. Dr. Martin was not able to name specific job openings for the plaintiff, but did testify that such jobs are available in the area. She admitted, however, that an employer would be reluctant to hire an epileptic and that plaintiff would need the aid of a third person in securing employment. In conclusion Dr. Martin stated:

> there are many jobs which do not require heavy lifting, which do not involve him in dangerous machinery, where he is on a high place and likely to fall. \* \* \*
>
> \* \* \*
>
> \* \* \* they are very available jobs, and epileptics can easily get jobs of this sort. Record, p. 109.

The ultimate burden of proof here is, of course, upon the claimant to show disability. In carrying out this burden the claimant establishes a prima facie case of disability when he shows (1) that because of his impairment he can no longer pursue his usual occupation; and (2) that his age, lack of education and work experience, and other factors are superimposed upon the lack of employment. Haley v. Celebrezze, 351 F.2d 516 (10th Cir. 1965); Staab v. Ribicoff, *supra;* Paul v. Ribicoff, 206 F. Supp. 606 (D.Colo.1962). Also, the evidence presented by the claimant must be devoid of any indication that he could undertake other substantial gainful employment. Staab v. Ribicoff, *supra;* Paul v. Ribicoff, *supra.* Once a prima facie case has been established by the claimant, the burden of going forward shifts to the government.

Plaintiff claims that he has presented a prima facie case,[3] and hence the government was required to introduce substantial evidence on two points: (1) the ability of the plaintiff to perform gainful work, and (2) the availability of such work. Undoubtedly, the testimony of Dr. Case constituted substantial evidence that plaintiff was disabled. This, however, was not conclusive on the ultimate fact in issue. Finally, the decision had to be made by the Secretary based on all the evidence. 20 C.F.R. § 404.1526; Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962); Jacobson v. Flemming, 186 F.Supp. 936 (S.D.N.Y. 1960). Where, as here, there is also medical testimony that the claimant is not totally disabled, and testimony of a vocational expert that the claimant's condition does not prevent him from performing gainful work, the opinion of disability of the claimant's doctor cannot be given conclusive weight. *See, e. g.,* Helland v. Flemming, 193 F.Supp. 290 (D.Or.1961). This is not to say that the expertise of the examiner would in every case allow him to evaluate the medical evidence and reach a conclusion as to disability without supporting professional opinion. The facts here appear to be susceptible to such an approach.

The standard applicable to the second point, that of reasonable availability of work, has been substantially modified by the 1968 amendments to 42 U.S.C.A. § 423. Prior to these amendments, the government's burden of going forward was not met by testimony of a vocational expert as to certain jobs which the claimant was capable of undertaking. A theoretical ability to do certain work was insufficient if no reasonable opportunity was available. Celebrezze v. Warren, 339 F.2d 833 (10th Cir. 1964). The government had to show the reasonable availability of suitable positions. Gardner v. Brian, 369 F.2d 443 (10th Cir. 1966).[4]

The 1968 amendments to 42 U.S. C.A. § 423 added the following provision: an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, *regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.* (Emphasis added.)

This addition to the Act effectively removes the previous requirement of reasonable availability. It is only necessary that the claimant be able to perform some job which exists in the national economy. It makes no difference that a job opening is not presently available in the area or that the claimant could not compete with persons under no impairment for the job in question. *See* Mullins v. Gardner, 396 F.2d 139 (6th Cir. 1968); Davis v. Gardner, 395 F.2d 681 (6th Cir. 1968).

The Senate Report on the 1968 amendments supports this Court's conclusion that the amendments substantially lessen the government's burden of showing that a claimant with an impairment is capable of performing substantial gainful work. In discussing the intended ef-

3. One of defendant's contentions is that the plaintiff failed to prove a prima facie case. We assume for purposes of this decision that plaintiff has established a prima facie case, since we have concluded that the government has presented sufficient evidence to rebut a prima facie case.

4. Even under these pre-amendment cases, the evidence presented in this case was sufficient on the issue of reasonable availability to support the Secretary's findings. Dr. Martin testified that the types of jobs which she suggested for the plaintiff were available in the Denver area. Several pre-amendment decisions held that the government was not required to find a specific employer and a specific job. *See, c. g.,* Haley v. Celebrezze, 351 F.2d 516 (10th Cir. 1965).

fect of the amendment on the reasonable availability requirement, the Senate Report states:

> While such factors as whether the work he [the claimant] could do exists in his local area, or whether there are job openings, or whether he would or would not actually be hired may be pertinent in relation to other forms of protection, *they may not be used as a basis for finding an individual to be disabled under this definition.* It is, and has been, the intent of the statute to provide a definition of disability which can be applied with uniformity and consistency throughout the Nation, without regard to where a particular individual may reside, to local hiring practices or employer preferences, or to the state of the local or national economy. Senate Report No. 744, 1967 U.S.Code Cong. and Adm. News, pp. 2834, 2882. (Emphasis added.)

It would seem then that a theoretical job is now enough and that it is no longer necessary to show that the person can actually get a job.

 We conclude on this basis the Secretary's findings are supported by substantial evidence and that his decision must be affirmed. Dr. Martin testified as to many types of jobs which the plaintiff could successfully undertake despite his impairments and indicated that these jobs exist in the Denver area. The Act as amended requires no more than this.

Finally, the plaintiff claims that the hearing examiner erred in allowing hearsay evidence in the form of doctors' reports. Congress has expressly provided that evidence which would be inadmissible in a judicial proceeding may be received in hearings such as the one under consideration here.[5] We conclude that doctors' reports may be considered by the hearing examiner, at least where the doctor has examined the claimant. As noted above, we do not believe that such reports would in every case fulfill the Secretary's burden. We need not decide whether doctors' evaluations not based on an examination of the claimant can properly be considered by the examiner, since there is substantial evidence here in support of the Secretary's decision even without such second degree hearsay. Consideration of such "barnyard" evaluations, strikes this writer as undesirable practice.

The motion of the government for summary judgment pursuant to 42 U.S.C.A. § 405(g) is granted and the decision of the Secretary is affirmed.

The Clerk is directed to dismiss the complaint and the cause of action.

---

5. 42 U.S.C.A. § 405(b) states:
    In the course of any hearing, investigation, or other proceeding, he [the Secretary] may administer oaths and affirmations, examine witnesses, and re-ceive evidence. Evidence may be received at any hearing before the Secretary even though inadmissible under rules of evidence applicable to court procedure.