Lloyd H. ZIMMERMAN, Plaintiff,

v.

Robert H. FINCH, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. T–4461.

United States District Court
D. Kansas.

Dec. 5, 1969.

J. H. Eschmann, of Ascough, Bausch, Eschmann, Robert E. Tilton, of Tilton & Storey, Topeka, Kan., for plaintiff.

Robert J. Roth, U. S. Atty., by Elmer Hoge, Asst. U. S. Atty., for defendant Robert H. Finch.

MEMORANDUM OF DECISION

TEMPLAR, District Judge.

This action has been brought under provisions of the Social Security Act, Title 42 U.S.C. § 405(g), for judicial review of a final decision of the defendant denying plaintiff's claim for disability insurance benefits provided for under the Act. It appears that on September 19, 1966, plaintiff filed his application for disability insurance benefits and this was denied initially by letter dated April 24, 1967.

Thereafter, on August 4, 1967, plaintiff filed a request for reconsideration and was notified by letter dated Novem-

ber 17, 1967, of affirmation of the initial denial. He then requested a hearing before the Hearing Examiner which request was granted and hearing took place February 29, 1968. The Hearing Examiner disallowed his claim on March 29, 1968. Plaintiff then filed a request for review before the Appeals Council and following consideration by the council, the claim was denied on May 21, 1968, and this stood as the final decision of the defendant.

Plaintiff, as the law permits, filed this action on July 12, 1968, to obtain a review of the decision.

The issue before the Hearing Examiner was whether plaintiff is entitled to a period of disability and to disability insurance benefits under Title 42 U.S.C. §§ 416(i) and 423, respectively, and specifically whether plaintiff has been unable to engage in substantial gainful activity by reason of medically determinable physical or mental impairment which has lasted, or can be expected to last, for a continuous period of not less than 12 months and which did not cease more than 14 months prior to the month of filing application.

Defendant has answered alleging, in substance, that the only issue in the case is whether the decision of the defendant is supported by substantial evidence. Each of the parties has filed a motion for summary judgment, has supplied the Court with briefs and has submitted the cause for the Court's consideration and determination.

■ The Court finds that the question for its determination is, as alleged by defendant, whether there is substantial evidence to support the findings of the defendant in denying plaintiff's claim.

■ The scope of review by this Court is limited to inquiry as to whether the decision of the Appeals Council, which in legal effect is the decision of the defendant (Secretary) is supported by substantial evidence in the record. This Court is not permitted to, in effect, conduct a trial de novo and substitute its findings for those of the Council, even though the Court might, after reviewing all the evidence, be so inclined. Substantial evidence means evidence sufficient to justify a refusal to direct a verdict in a jury case against a party having the burden of proof. Haley v. Celebrezze, 351 F.2d 516 (10th Cir.).

The evidence offered by plaintiff in support of his claim may be summarized as follows:

He testified that he was married and had three children, age 14 and twins age 12. That from 1963 to 1966 he worked as manager of the Shawnee County Humane Society and was on call 24 hours a day. That from April to October of 1963, he worked for Shawnee Dairy and before that worked for Douglas Construction Company. Prior to that he worked for a service station and before that he did farm work. Prior to this time he worked for Harry Darby's Dairy Farm and then before this time for Jordan Bakery and a Boys' Industrial School. At the Industrial School he was a dairy supervisor looking after the cows and processing the milk. At the bakery company, he worked as a mechanic and delivery man. While working for the service station, he did general work which included changing tires and filling gas tanks.

The plaintiff testified that he suffered a coronary occlusion and since said time, he has been unable to engage in any type of work. Since this time, he has had black-out spells, severe chest pains, dizziness, forgetfulness, and his mind goes blank at times. He does not drive since he cannot judge distances. He further testified that he was treated by Dr. Crary and Dr. Crary let him go back to work in a limited fashion in March of 1967. When he did, he tried to drive a tractor for Olin Thompson, but he had to quit this work because he just couldn't take it. The black-out spells would come on and they would get worse when he was trying to

work. That this work caused him to have more chest pains.

On February 24, 1968, he was examined by Dr. Kirk Miller. That since he has had his coronary occlusion, his general condition got worse. With the least little exertion, the chest pains would start up again and he would have to go to the house and lay down. That his strength is a lot weaker now than before the heart attack. That he sought help from the state agency regarding rehabilitation for him; however, he was told that he was too old and was not capable of going out and taking a job. That his wife must cut the wood for his farm and that it is too much exertion for him to handle a chain saw and when he stoops over, he gets dizzy spells and becomes very nervous. That it makes him nervous since his heart attack to be around children and now his wife and his children have to carry the water to the house. That if he tries to get a bucket of water, he cannot carry a bucket of water like a normal person could and bring it to the house. At nights, he has difficulty breathing; and he has spells on occasions. That he takes demerol for the chest pains and he was at the time of his testimony taking different types of medication and that he must take this medication daily.

He testified that when he worked for the Shawnee County Humane Society he would keep the place clean and pick up the crippled and injured dogs and his wife would keep the books.

He testified that when he worked for the Shawnee Dairy, he would put up the pipes and take care of the milk after it was processed and would have to keep constant watch of the temperature gauges in the processing of the milk. He would wash cans and deliver milk. He also hauled ice and was a general roustabout.

When he worked for the Douglas Construction Company he was a common laborer.

When he worked for the service station, he pumped gas, changed oil, checked tires and he might do some minor engine work.

While he worked at the Boys' Industrial School, he operated the milking machine.

He testified that the day before he had his heart attack, he had very severe chest pains and the next morning went to see Dr. Crary and was placed in the hospital for one week. That after his release from the hospital, he was in bed for about three weeks and that he still has chest pains a couple of times a week. This chest pain is a real sharp pain and he becomes very short of breath. That the most he has walked since the heart attack is about a block and he testified that the reason the vocational rehabilitation people told him they could not teach him anything was that his education was a drawback. That he had an eighth-grade education and now he stays in a chair most of the time and does not do any chores. That he does take care of his chickens; however, his boy helps him quite a bit. His boy carries most of the water and feed.

He testified that when he has these dizzy spells, he just passes out and that this happens in a chair. That he has these dizzy spells now quite frequently. That they are getting worse and that he has shortness of breath when he has these chest pains and when he attempted to drive a tractor, he had chest pains and that he only worked about 4 days and then only worked 3 or 4 hours a day driving this tractor. That he did have several black-out spells while driving this tractor.

In support of plaintiff's claim, his wife offered testimony that:

Her husband had always been a hard worker and that he would always cut the wood for the stove. That since his coronary occlusion, he appears to be very short of breath and

that when he moves around, he moves around real slowly like an 80-year-old man. That the coronary occlusion actually occurred on July 5, 1966. That her husband will sit in a chair and they will hear this loud gasping for breath and he would indicate to her that he had pain and she would automatically pick up his medicine and give it to him. That he does very little around the house. That when he worked in the field for the 3 or 4 days that he did, she was told by the man that her husband worked with that her husband just acted old and that he could hardly sit up. She further testified that when he would go to work in the morning, he would come home and be completely exhausted and couldn't sleep. That he would have pain and she would give him demerol.

In addition, plaintiff produced the witness Wilcox, a rehabilitation psychologist, who gave as his opinion, in substance, that considering the condition of plaintiff and the physical difficulties he had on exertion, plaintiff would be ruled out of reasonable kinds of employment and because of his education and background, his ability to be alert on a job all the time would not likely be tolerated in the economy. He further testified that after considering the report of Dr. Miller as to plaintiff's heart condition and other ailments, it would be impossible to expect plaintiff to take a position in competitive employment.

In support of his claim, plaintiff points to evidence indicating that any exertion brings on chest pains, that he takes demerol for this pain, that he cannot be left alone, that he has black-out spells and cannot drive his car, that his attitude is one of discouragement, he looks much older than he is, his effort at driving a tractor proved too much for him.

The foregoing evidence, considered in the light most favorable to plaintiff, would, indeed, support a finding that he was under disability as defined in the Social Security Act, 42 U.S.C. § 423(c) (2). But the Court must consider the case from the standpoint required by the Act and review the evidence contained in the record to determine whether the defendant's final decision is supported by any substantial evidence.

It appears from the record that plaintiff contends he became unable to work at the age of 54 by reason of a heart condition that had developed while he was engaged in physical labor.

The evidence upon which the denial of plaintiff's claim rests consists, in part, of a report of Dr. Crary to whom plaintiff was referred as a specialist in internal medicine. The report of Dr. Crary who examined plaintiff on July 6, 1966, indicated a definite posterior wall infarction. Plaintiff did not enter the hospital until July 8, 1966, where he was treated for arteriosclerotic heart disease with posterior wall infarction. During this time, according to Dr. Crary, he received only librium and showed no evidence of serious complications or pain, and he left the hospital July 15, 1966, with instructions to continue to rest at his home. The report further reveals that six weeks after his attack, on August 30, 1966, an electrocardiogram showed the infarction was healing and an X-ray showed only "moderate cardiomegaly." The report further indicates that on October 11, 1966, Dr. Crary found plaintiff's infarction was healing well and his level of activity was then to be increased. The evidence further discloses that Dr. Crary informed Dr. Lawson, the Chief Medical Consultant of the Kansas Division of Rehabilitation, on January 5, 1967, that he had last examined the plaintiff on December 13, 1966; that plaintiff had continued to improve, that his heart remains in regular rhythm, and that it was not particularly enlarged. Furthermore, the electrocardiogram was stable and there was no evidence of congestive failure. Plaintiff's blood pressure was within normal limits and that it was Dr. Crary's opinion the plaintiff had the capacity to re-engage in moderate physical activity and he would probably continue to

improve to a degree that he would be able to engage in more arduous activity.

Dr. Dennis Farrell, a psychiatrist, examined the plaintiff on February 6, 1967, and reported that plaintiff complained of pain across his chest and arms but otherwise did not have complaints of physical symptoms connected with his heart condition. Plaintiff told the doctor that he had feelings of nervousness, irritability and depression since his heart attack but that he was getting along well in respect to such physical functions as appetite, sleeping, and sexual adjustment. Dr. Farrell's findings were, in part, that there is no indication of psychotic decompensation, but a definite limitation at present of plaintiff's functional capacity due to mild to moderate anxiety and depression, reactive to his physical illness. The doctor suggested that the best treatment for plaintiff's condition would be an opportunity to overcome his feelings of incapacity, which perhaps could be provided in gradual stages under the guidance of vocational rehabilitation counselors.

On March 22, 1967, Dr. Crary informed Dr. Lawson that plaintiff was doing better although he was still depressed, that his blood pressure was normal and his heart had normal sinus rhythm, that he had no angina and was gradually increasing his activities at home, and that it was Dr. Crary's opinion that plaintiff's progress was most satisfactory and that he was able to engage in light to moderate physical activity without detriment to himself.

Plaintiff was examined by Dr. Reinking, an internist, on August 30, 1967. The report of this doctor stated, in substance, that it is apparent that plaintiff's cardiac symptoms are gradually improving and that his angina pectoris is becoming less frequent and less prolonged and his exercise tolerance at the present time is quite good. He further stated that it would seem that the patient could probably in the very near future engage in fairly normal activities and moderately heavy work and that he certainly does not need to be limited to sedentary activities at the present time. In fact, an exercise program might improve his cardiac function considerably.

From the record, the defendant concluded that plaintiff required hospitalization for only 7 days in July, 1966; that his treating physician was of the opinion that plaintiff had the capacity to re-engage in moderate physical activity and that he would not be permanently incapacitated as a result of the heart attack; that plaintiff had no angina and that heart rhythm was regular; and that plaintiff could now engage in light to moderate physical activity without detriment to himself. This opinion was supported by a similar one from Dr. Reinking. The defendant points out that Dr. Miller concluded that plaintiff's cardiac condition did not prevent sedentary work and simply had advised him to engage in light activity.

██ The defendant correctly found that the fact a person has a physical condition which to some degree restricts his activity does not mean that he has an impairment which disables him within the meaning of the Act. Dvorak v. Celebrezze, 345 F.2d 894 (10 Cir.). Nor does the fact that his physical condition involves the heart automatically make it a disabling impairment. Any conflicts in the medical evidence are for the defendant to resolve as the trier of fact. Beasley v. Cohen, unreported, T–4342, 1968.

The evidence further disclosed that even though plaintiff's physical condition limited him to the performance of light to moderate work, and even though he had mild to moderate anxiety, there were jobs he could perform and which were available considering the record, the age, and the education of the plaintiff, and that he could qualify for employment as a maintenance man, a gatekeeper, or a guard, or even light janitorial services or work in the dairy processing industry, which positions existed in the Topeka, Kansas, area where plaintiff resides.

■ The foregoing is a summarization of evidence which the defendant found sufficient to justify a refusal of the plaintiff's claim and this Court must say that under the definition of substantial evidence, supra, such evidence is sufficient to justify a refusal to direct the verdict in a jury case against the party having the burden of proof, which in this instance the plaintiff does have.

The Court has carefully examined the record in this case, the briefs submitted by the attorneys, the cases cited by them and other cases bearing upon the problems presented here, and is unable to say that the findings of the defendant are not supported by substantial evidence. The Court is, therefore, required to affirm the findings of the Hearing Examiner and the decision of the defendant.

The plaintiff's motion for summary judgment must be denied and the defendant's motion for summary judgment must be granted.

Prevailing counsel shall prepare, circulate and submit an appropriate order.