**Jose Torres RODRIGUEZ, Plaintiff,**

v.

**SECRETARY OF HEALTH, EDUCA-TION AND WELFARE, Defendant.**

**Civ. No. 778–69.**

United States District Court,
D. Puerto Rico.

Jan. 19, 1973.

Rafael D. Molinary, Servicios Legales de Puerto Rico, Rio Piedras, P. R., for plaintiff.

Julio Morales-Sanchez, U. S. Atty., for defendant.

MEMORANDUM OPINION
AND ORDER

TOLEDO, District Judge.

This is an action brought by plaintiff pursuant to Section 205(g) of the Social Security Act (hereinafter called the Act), Title 42, United States Code, Section 405(g), seeking judicial review of a denial by the Secretary of Health, Edu-

cation and Welfare (hereinafter named the Secretary), of his application for the establishment of a period of disability under Section 216(i) of the Act, Title 42, United States Code, Section 416(i), and for disability insurance benefits under Section 223 of the Act, Title 42, United States Code, Section 423.

The administrative record before the Court reflects that on October 20, 1964, plaintiff filed an application for disability insurance benefits alleging that he became unable to work on June 6, 1961, due to an amputation of the left arm below the elbow. The claim was initially denied on December 24, 1964, and, upon reconsideration, the denial was affirmed on March 18, 1966. Plaintiff did not pursue any further his claim.

On March 27, 1968, plaintiff filed the current application for disability insurance benefits alleging that he became unable to work on June 6, 1961, due to the loss of his left arm and eye trouble (Tr. 85). The Administration disallowed the new application on the ground that his impairment was not of sufficient severity to prevent him from engaging in any substantial gainful activity. Notice of the disallowance was given to plaintiff by a letter dated December 2, 1968. (Tr. 92.) He requested a reconsideration of the disallowance on December 19, 1968 (Tr. 94). In a letter dated April 2, 1969 (Tr. 98), plaintiff was advised that after reconsideration, the Social Security Administration confirmed its initial determination.

Plaintiff disagreed with the Administration's reconsideration and requested a hearing on April 7, 1969 (Tr. 23); which hearing took place on September 11, 1969. At the hearing plaintiff was assisted by counsel and a vocational expert testified. The hearing examiner, after considering the case de novo, entered his decision on September 16, 1969 (Tr. 12), finding that plaintiff was not under a disability as required by the Act. The hearing examiner's decision became the final decision of the Secretary when it was affirmed by the Appeals Council on October 24, 1969.

Plaintiff meets the insured status requirements through the quarter ending September 30, 1970. Therefore, on the basis of his application of March 27, 1968, plaintiff must establish that he was under a disability which commenced prior to September 30, 1970, when he last met the special insured status requirements.

The statutory scheme of judicial review being limited in nature, this Court is bound to ascertain only whether the record as a whole contains substantial evidence to support the Secretary's findings. Santiago v. Secretary of Health, Education and Welfare (D.C.P.R.1971), 336 F.Supp. 1071; Rosario v. Secretary of Health, Education and Welfare (D.C. P.R.1971), 324 F.Supp. 1321.

Section 216(i) and 223(d) of the Social Security Act, Title 42, United States Code, Sections 416(i) and 423(d), defines the term "disability" to provide, in part:

"(d)(1) the term 'disability' means —

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months;

(B) * * *

(2) For purposes of paragraph (1)(A)—

(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sen-

tence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

(B) * * *

(3) For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

(4) * * *

(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

Plaintiff, born on December 12, 1912, holds a fourth grade education and is right handed. At the time of the hearing, he weighed 110 pounds and was 62 inches tall. For the purpose of the hearing, it was assumed that he had an above-elbow amputation of the left arm, a pterygium in the right eye, a primary condition in the visual phase, a secondary condition of astigmatism and presbyopia, a moderate non-severe hypersensitive condition, and scoliosis (Tr. 44).

On June 6, 1961,[1] plaintiff suffered an accident which produced a compound fracture of his left wrist. This condition was further complicated with the presence of gangrene; which development eventually forced the amputation of his left arm above the elbow. (Exhibit 13.)

The work experience of plaintiff shows that, before the accident, he worked for 16 years as an agricultural worker in a sugar cane farm, loading carts; that he worked for the Public Works Department in the weeding of the sides of the road with a machete or hoe, and that he worked as a machine greaser (Tr. 62). The record also reveals that from June 16, 1961, to September 1964, plaintiff worked as a watchman; that for about 7 months between 1965 and 1966, worked for the Urban Renewal Corporation; that for three months in 1968, worked for the Municipality of Añasco; and that at the time of the hearing (September 11, 1969), was working, on a part time basis, as a watchman for Arturo Diaz Construction Co. in Mayaguez.[2]

Plaintiff alleges that due to the amputation of his left arm and the presence of the other impairments we have referred to, he is unable to perform his prior employments. Plaintiff further alleges that, in view of the above, his

---

1. At the hearing, plaintiff claimed the accident happened in 1959, although he stated it was in 1961 in his application for disability insurance benefits.

2. In relation to the fact that at the time of the hearing plaintiff was working as a watchman for Arturo Diaz Co., in Mayaguez, the attorney for the plaintiff, in this review proceeding, asserts that the hearing examiner gave too much emphasis to such a situation (Tr. 48, 51), although, he now also asserts, the hearing examiner recognized plaintiff suffers an impairment (Tr. 54). The counsel assisting plaintiff at the hearing, in regard to the fact stated above, explained that Arturo Diaz was the employer for whom plaintiff worked at the time he suffered the accident which broke his arm. Said counsel further explained that the part-time job of watchman plaintiff was performing at the time of the hearing was the result of a special consideration that Arturo Diaz Co. was giving to the plaintiff (Tr. 36); that is, that it is an act of kindness bestowed by this corporation because he used to work for them (Tr. 37). Likewise, said counsel asserted, that said kindness was also in consideration to the fact that the Arturo Diaz Co. was precisely engaging in construction in Mayaguez at that time (Tr. 37, 38, 39, 55). Plaintiff's counsel at the hearing further expressed that the impairments affecting his client prevent him even from performing the job of watchman; but that he has been forced to accept said job because of an inability to find any other (Tr. 38). Lastly, he asserted, on plaintiff's behalf, that even said job could not be performed by plaintiff on a full time basis (Tr. 38).

working capacity has diminished to such an extent that he is no longer capable of performing a substantial gainful activity.

Initially, this Court notices that, although all of the employments plaintiff has engaged in require, for their performance, a low intellectual effort, to which plaintiff's education is suited, they, nevertheless, require a high degree of skill, dexterity and movement.

A vocational expert, as we stated before, testified at the hearing before the hearing examiner. Dr. Hector A. Puig, the vocational expert, assessed the medically established physical impairments in this case and found that the plaintiff could perform the job of watchman, he was performing at the time of the hearing even on a full time basis (Tr. 43, 44, 45). During the hearing, the following transpired between plaintiff's counsel and Dr. Puig with regard to plaintiff's performance:

Examination of Vocational Expert by Representative.

Q. The job of watchman entails to be out in the cold of night, before the dangers of having to confront an assailant, dangers which are irrelevant to the situation but which a person who is 56 going on 57 years old must face in a job such as this and who does not have two arms to defend himself nor to defend the property he is guarding. The job of watchman, even though it is apparently considered a sedentary job, does not lack the responsibility demanded by an employer that this gentleman guard the property, protect that property, even when we know that one of the dangers present in our community is that our property is not well guarded. There are day watchmen and night watchmen. In other words, we know that there are local corporations and companies who engage in the guarding of properties. Do you know whether this gentleman performed his job as watchman during the day or during the night? (Tr. 47).

A. He described the shifts he had. He mentioned that he had one which took part of the night because it is from 4:00 to 12. (Tr. 47).

\* \* \* \* \* \*

Furthermore, the following, subsequently, transpired:

Vocational Expert: This witness understands that a person with both arms is a better candidate for employment and is in a better personnel field than claimant. (Tr. 49). \* \* \*.

\* \* \* \* \* \*

During the hearing, the vocational expert also expressed that in addition to the job of watchman, which he considered a sedentary job, there would be other jobs that a disabled, unskilled person (such as plaintiff), could perform (Tr. 45); assuming such person is not intellectually or severely impaired. These other jobs, in his opinion, are that of automobile-garage dispatcher, dispatching gasoline,[3] and as a store attendant,

---

3. In relation to plaintiff's capacity to perform this job, the following transpired between plaintiff's counsel, the hearing examiner and the vocational expert:

Representative: I understand that a gasoline dispatcher is not only a person who removes the hose from the gasoline pump but that he also has to perform the duties of dispatching the oil, checking the oil, lifting the automobile hood, putting air in the tires. (Tr. 53.)

Examiner: I would like Dr. Puig to clarify that for me, also. That was something I was going to ask. In other words, the duties of a gasoline dispatch-er, do they include functions such as lifting the automobile hood, checking the battery, checking the oil, are they all related to this function or is it just to place the gasoline hose and to dispatch gasoline? (Tr. 53.)

Vocational Expert: There are usually more than just one person at a gasoline station. This witness is the first to acknowledge that he could not change a tire or replace other parts alone but I know of persons who primarily engage in such things as checking the oil or dispatching water which are the easiest functions of a gasoline dispatcher.

or a street district circulator (Tr. 45, 46).

■ As to defendant's allegation that plaintiff is now performing a job, thereby engaging in a substantial gainful activity, consequently, being not disabled within the meaning of the Act, the Court deems appropriate to say that the mere fact that a claimant has been working does not mean that he has the ability to engage in substantial gainful activity.[4] Leftwich v. Gardner (4 Cir. 1967), 377 F.2d 287; Flemming v. Booker (5 Cir. 1960), 283 F.2d 321; Coyle v. Gardner (D.C.Hawaii 1969), 298 F. Supp. 609. Furthermore, if plaintiff's allegation that the work he is performing stems from an act of charity from the employer who employed him at the time of his accident, is true, we cannot conclude that he is performing a substantial gainful activity. That is, a person who engages in an employment which is available to him only because of an act of charity from his employer, cannot be considered to be performing a substantial gainful activity as defined under the Act.

In relation to the participation of the Vocational Expert in this cause, we are of the opinion that as to the allegation that plaintiff can perform the work of a gasoline dispatcher at a gasoline station, his testimony is inadequate and does not help the hearing examiner to satisfy the substantial evidence requirement. Furthermore, we are not satisfied with the way this aspect was considered and explored as it is revealed by our footnote number 3.

Additionally, in Caraballo v. Secretary of Health, Education and Welfare (D.C. P.R.1972), 346 F.Supp. 93, this Court while considering the vocational expert testimony at the administrative hearing and the hearing examiner's decision based upon the record, stated the following:

"We agree with the hearing examiner's decision * * * to the effect that the Secretary need not show that jobs were available for the claimant or that claimant would be hired if he applied for work. * * * This means, in essence, that the fact that jobs which a claimant could perform exist in significant number either in the region where such individual lives or in several regions of the country, precludes considering that such a claimant is disabled, even though, for instance, he is unemployable because of adverse employer hiring practices or because of extreme competition for jobs due to the existence of high unemployment in a particular region.

But this is not to say, that a person who suffers from a medically determinable impairment, who theoretically could perform the particular duties of jobs available in the national economy, can effectively and efficiently do these jobs on the same level of efficiency as one who is not so disabled.

If there is no evidence in the record which would demonstrate that the degree of efficiency of a claimant who is disabled is not markedly inferior from one not so disabled with respect to the particular jobs which a Vocational Ex-

---

4. On February 7, 1972, the defendant herein filed a motion to remand under Section 405(g) of Title 42, United States Code, predicated upon the assertion that they have been advised that earnings have been posted to the plaintiff's account for the last three calendar quarters of 1969, for all of 1970 and for the first calendar quarter of 1971; consequently, the defendant argues this constitutes new material evidence pertinent to plaintiff's claim which the defendant has not considered, for which reason there is good

cause to remand. The plaintiff has opposed said motion by asserting basically that the hearing examiner denied plaintiff's claim in view of the fact he was working at the time of the claim and, subsequently thereafter (see our footnote 2) and that the defendant has already taken into consideration plaintiff's work in the decision of the claim. Defendant filed a reply to plaintiff's opposition contradicting plaintiff's position in relation to this remand motion.

pert testifies that a claimant may perform, then the conclusion that there exists work in the national economy which claimant could perform is not supported by substantial evidence. This means that a person is disabled under the law if he will not be employed because of a substantial diminishment of his productivity due to a medically determinable disability, even if he can theoretically perform the jobs."

■ There is no doubt that an impairment now exists. Plaintiff, who was accustomed to perform manual work, now lacks his left arm and, additionally, suffers various other impairments. In view of Dr. Puig's testimony, plaintiff's performance of an employment would have to be considered in terms of employments which realistically could be performed by him due to the impossibility of having him retrained (Tr. 46) because of his age.[5]

■ We are of the opinion that the vocational expert's testimony at the hearing before the hearing examiner likewise fails to meet the requirements established by us in Caraballo v. Secretary of Health, Education and Welfare, supra.

In view of the foregoing, the Court hereby finds there is good cause to remand this action under Title 42, United States Code, Section 405(g); and it

Orders, that the defendant reconsider this cause and that vocational testimony be received, which testimony shall comply with our decision in Caraballo v.

Secretary of Health, Education and Welfare, supra; and it further

Orders, that the defendant proceed to consider any new additional evidence it may have (see our footnote number 4) or the plaintiff may deem proper to present at the reconsideration of this cause; and it is further

Ordered, that plaintiff proceed to carry on any additional proceedings he may deem adequate, consistent with this memorandum opinion and order.

It is so ordered.

5. We are of the opinion that our present case is different from González v. Secretary of Health, Education and Welfare (D.C.P.R.1971), 331 F.Supp. 865, where we were confronted with a plaintiff who had undergone a below elbow amputation of the left forearm. In the *González* case, no other impairment was alleged and vocational rehabilitation was conducted to help him engage in substantial gainful employment.

It is very clear to the court that the fact that a man has lost the complete use of an arm is not per se disabling.

Wright v. Gardner (7 Cir. 1968), 403 F.2d 646; Robinson v. Celebrezze (5 Cir. 1964), 326 F.2d 840; González v. Secretary of Health, Education and Welfare, supra. But we are sufficiently satisfied that the situation before us is different from those cases, in view of plaintiff's age, education, work experience and the impossibility of vocationally rehabilitating him. Nevertheless, this is not to say that we, at this time, are making a finding that plaintiff cannot engage in any substantial gainful employment.