**Dolores LEBRON, Plaintiff,**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE,
Defendant.**

**Civ. No. 1144–72.**

United States District Court,
D. Puerto Rico.

Jan. 24, 1974.

Jorge Meaux-Davila, Juncos, P. R., for plaintiff.

Asst. U. S. Atty. Ignacio Rivera-Cordero, San Juan, P. R., for defendant.

## MEMORANDUM OPINION AND ORDER

CANCIO, Chief Judge.

This is an action seeking review of a final decision of the Secretary of Health, Education and Welfare denying plaintiff an application for disability insurance benefits under Sections 216(i) and 223(d) of the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423(d).

Plaintiff filed an application for a period of disability and disability insurance benefits on August 11, 1971 indicating that he became unable to work on December 5, 1970 at the age of 41. His application was denied by the Social Security Administration both at the initial and reconsideration levels and the plaintiff filed for a hearing which was held before the Administrative Law Judge on September 16, 1972. In his decision issued on September 26, 1972, the Administrative Law Judge found that the plaintiff was not disabled for Social Security purposes and the plaintiff thereafter requested a review by the Appeals Council which, on November 20, 1972, confirmed the decision of the Administrative Law Judge thus making such decision the final decision of the Secretary.

The only issue before this Court is whether the decision of the Secretary of Health, Education and Welfare, that plaintiff was not entitled to a period of disability or to disability insurance benefits under the Act, is supported by substantial evidence from the record as a

whole. 42 U.S.C.A. Section 423(d) requires the claimant, in order to establish his claim, to show, considering his age, education and work experience, along with his impairment, his inability to engage in any substantial gainful work "which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work . . ."

Further, "work which exists in the national economy" is defined as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country."

■ For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

In addition to the above provisions of the Social Security Act, the Secretary of Health, Education and Welfare, pursuant to the authority vested in him by Sections 205(a) and 223(d)(2)(B) of the Social Security Act, 42 U.S.C.A. Sections 405(a) and 423(d)(2)(B), has adopted regulations (32 CFR 404.1540–06) which set forth general criteria for the evaluation of disability. These regulations, as issued subsequent to the 1967 amendments to the Social Security Act, contain an Appendix (Subpart P) which lists specific impairments *which are deemed preclusive of any gainful activity*. Among such impairments listed are peptic ulcers. Under Sections 5.04 and 5.08 of the Appendix, an individual suffering from peptic ulcers *is presumptively disabled* for social security purposes if he meets the criteria established therein.

Under the criteria described by the above-cited regulations for peptic ulcers, a male individual whose height is 68 inches, is presumptively disabled under the Social Security Act if it is shown that he has:

1. Peptic ulcer or residuals or complications therefrom *and*

2. Weight loss or malnutrition resulting from malabsorption, assimilation or decreased caloric intake *and*

3. (a) Weight equal to or less than 109 lbs. or

   (b) Weight greater than 109 lbs. but 116 lbs. or less *and* one of the 7 abnormal laboratory test findings listed in Section 5.08(B).

■ Section 205(g) of the Act provides that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Accordingly, the Secretary's findings, if reasonable, should not be disturbed by the Court on review. Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L. Ed.2d 842 (1971); NLRB v. Walton Manufacturing Co., 369 U.S. 404, 82 S. Ct. 853, 7 L.Ed.2d 829 (1962). It has also been held that the conclusive effect of the substantial evidence rule applies not only with respect to the Secretary's findings as to basic evidentiary facts, but also to inferences and conclusions drawn therefrom. Levine v. Gardner, 360 F.2d 727 (2d Cir. 1966); Rocker v. Celebrezze, 358 F.2d 119 (2d Cir. 1966); Palmer v. Celebrezze, 334 F.2d 306 (8th Cir. 1963).

■ Plaintiff is a 43 year old male who has a third grade education (Tr. 26) and has worked all his adult life in arduous unskilled occupations which have included that of farm laborer, construction laborer, maintenance man, dishwasher and warehouseman in a greeting card printing firm (Tr. 27–40). Most of this work the plaintiff performed in the continental United States (Tr. 5–20). He has described his health problem as "stomach ulcers," for which condition he underwent a major operation in 1956 which involved the surgical removal of most of his stomach. Following such operation the plaintiff returned to work and continued to work regularly until 1962 when he stopped working on

the advice of his treating physician because of the physical demands of the job and because the chemicals with which he worked were "hurting him" (Tr. 32). Plaintiff again returned to work in 1963 and worked irregularly and intermittently until December, 1970 (Tr. 32–49). He has not been able to do any work since 1970 because of constant stomach pains, vomiting (Tr. 71), diarrhea, loss of weight, weakness, and low pressure (Tr. 43–45). The plaintiff's earnings record reflects no earnings for the year 1962 and a substantial decrease in earnings in all subsequent years except the year 1970 (Tr. 65).

According to the medical evidence the plaintiff has an impairment of the digestive system which has been medically diagnosed as "chronic peptic ulcer." He underwent a subtotal gastrectomy in 1956 (Tr. 76, 78, 80) which is demonstrated by X-rays studies (G.I. series). Following such operation the plaintiff continued to have residuals and complications which have been described by Dr. Miguel E. Martínez, the plaintiff's treating physician, as a "dumping syndrome" (Tr. 77, 78, 79) and by Dr. José M. Berio, the Government's contracted physician, as a "post gastrectomy syndrome" (Tr. 81). The plaintiff's residuals include anemia, diarrhea and failure to gain weight (Tr. 77–80). In this regard it is noted that plaintiff, whose height is 68 inches, weighed 137 pounds prior to his operation, 128 pounds at the time of his examination on December 6, 1971 (Tr. 80), 122 pounds (fully clothed) at the time of the hearing (Tr. 43), and less than 120 pounds at the time of his request for review by the Appeals Council (Tr. 7). Plaintiff has not engaged in any gainful work activity since December 1970 and has depended entirely upon his wife for his support (Tr. 43).

At the hearing, Mrs. Ermida Albizu, a vocational expert,[1] who admittedly had personal familiarity with jobs that existed in the Puerto Rican economy but only second hand knowledge of the characteristics and requirements of jobs in the United States (Tr. 53), testified, among other things, that the physical demands of plaintiff's previous jobs (which almost without exception were performed by plaintiff in the United States) required the ability to stand, kneel, crouch, bend, etc. Also, that such jobs required coordination of eyes, hands and arms and having the physical stamina to do the job (Tr. 43). She considered such work, in terms of physical demands, as ranging from "light" to "heavy" (Tr. 48, 49). In response to the Administrative Law Judge's question as to the existence of jobs plaintiff could perform in the region where he lives, Mrs. Albizu indicated occupations that were "light" and "moderate," in terms of physical demands, if "not disturbed by the on and off periods of the diarrhea" and concluded that plaintiff could certainly go back to most of the jobs he had performed previously (Tr. 50). In response to the query posed by plaintiff's counsel regarding the effect plaintiff's almost constant diarrhea would have on his job performance, the expert witness quibbled uncertainly:

"That is a problem, as I said is going to depend—and I think that I mentioned that if he has a machine . . . while the machine is working . . . although I admit that (it might cause) inconvenience of the type." (Tr. 52).

Mrs. Albizu further testified that agricultural seasonal jobs "ran in the thousands" according to a report of the *Department of Labor*. Also, that the jobs of dishwasher were in hundreds in Puerto Rico and much higher in the United

---

1. Since it appears from the medical evidence that plaintiff's gastro-intestinal impairment met, at least on a prima facie basis, the standard of disability specified in Subpart P (Appendix) of the Social Security Regulations (32 CFR 404.1505–06) for a finding of presumptive disability *without regard to vocational considerations*, it is difficult to understand the failure of the Administrative Law Judge to even attempt to explore the possible applicability to this claim of the aforementioned Regulations.

States but regretted not being able to give a specific number (Tr. 53). Mrs. Albizu's testimony does not enlighten us at all on the crucial question of what effect plaintiff's gastro-intestinal impairment, particularly his constant diarrhea and the need to take food every two hours would have on the efficiency of his work performance; nor indeed whether he could deliver *on a sustained basis*, the performance requirements involved in the various jobs proposed.

As shown by the uncontroverted medical evidence, the plaintiff is suffering from residuals and complications of peptic ulcers which, as we said, have resulted in a gradual loss of weight. His height is 68 inches and his weight (fully clothed) was 122 pounds at the time of the hearing and less than 120 pounds at the time of his request to the Appeals Council for review of the Administrative Law Judge's decision. If reasonable allowance is made for six to eight pounds of shoes and clothing, then it is obvious that the plaintiff actually weighed only *115 to 116* pounds (if not less) at the time of hearing and *less than 113 pounds* at the time of his request for review to the Appeals Council.

Thus, on the basis of the medical evidence alone and by itself, it seems compelling to conclude that the plaintiff's gastro-intestinal impairment does meet the Secretary's own established levels for a presumptive finding of disability. However, even assuming, *arguendo*, that at any time during the period at issue the plaintiff did not meet the presumptive disability standards prescribed in 32 CFR 404.1505–06, it is the opinion of this Court that the record does not support the Secretary's decision to the effect that plaintiff is not disabled by reason of his medically-established impairment. Considering the obvious functional limitations imposed by claimant's gastro-intestinal condition amply established by the record—this Court is not convinced by the vocational expert's projections that the plaintiff can effectively perform the duties of the jobs which are ostensibly available to him in

Puerto Rico or in the national economy. This is particularly evident in view of plaintiff's anemic condition, constant diarrhea and other reported medical problems associated with his gastro-intestinal impairment.

This Court is fully aware of the fact that an individual may not be considered disabled for Social Security purposes if he can engage in some kind of substantial and gainful work, regardless of whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. Trujillo v. Cohen, 304 F.Supp. 265 (D.C.1969); Harvey v. Finch, 313 F.Supp. 323 (D.C. 1970). But this Court has also repeatedly stated that it is not sufficient to make a theoretical finding that an individual who has a medically established impairment can perform certain jobs which are purportedly available to him. The true test is whether a particular job is realistically within the physical and mental possibilities of a claimant, *i. e.*, whether he can effectively perform these jobs *on a similar level of continuity, stamina and efficiency as one who is not impaired to the same degree of severity.* Caraballo v. Secretary of Health, Education and Welfare, 346 F.Supp. 93 (1972).

In the instant case the record does not only fail to support such a finding, but to the extent that plaintiff has carried his burden of proof with substantial, probative, and reliable evidence, the Court is persuaded that the plaintiff's medical condition falls within the scope of 32 CFR 404.1504–06, and also meets the requirements established by the Caraballo v. Secretary doctrine stated above. This persuasion is reinforced by the failure of the Administrative Law Judge to come to grips, and to submit specific findings, so essential in a case of this type, on the issues of (a) the applicability of the standards for presumptive disability under 32 FCR 404.1504–06; and (b) the ability of the plaintiff to perform competitively the jobs which are theoretically available to him, in accordance with this Court's mandate in

the Caraballo v. Secretary decision, *supra*. This failure constitutes an erroneous application of the law to the facts on the record for which judicial relief must be, and is available from the reviewing judiciary.

This Court must find that in this case the decision of the Secretary of Health, Education and Welfare is not supported by substantial evidence in the light of the record as a whole. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

It is the judgment of this Court that the plaintiff, Dolores Lebrón, is entitled to a period of disability and to disability insurance benefits under the Social Security Act, as amended, effective and beginning on December 5, 1970.

It is so ordered.