Manuel A. **MIRANDA**, Plaintiff,

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE**, Defendant.

Civ. No. 119–73.

United States District Court,
D. Puerto Rico.
April 22, 1974.

Plinio Pérez Marrero, Hato Rey, Puerto Rico, for plaintiff.

Julio Morales-Sanchez, U. S. Atty., for defendant.

## OPINION AND ORDER

TOLEDO, Chief Judge.

This is an action brought under Section 205(g) of the Social Security Act (hereinafter the Act), Title 42, United States Code, Section 405(g), to review a final decision of the Secretary of Health, Education and Welfare (hereinafter the Secretary), terminating plaintiff's disability benefits as of August 1971. Disability benefits had been awarded plaintiff as of March 10, 1969. The sole issue before us is whether the Secretary's decision is supported by substantial evidence in the record.

 As appears from the record of the proceedings at the administrative level, plaintiff is 39 years old, has an 8th grade education and has always been employed in the construction industry. He was last employed as a carpenter (Tr. 69). On March 10, 1969, while at work, plaintiff picked up a wooden girder and in so doing he injured his back (Tr. 107). The injury was diagnosed as a sacrolumbar sprain by Dr. Luigi, a general practitioner (Tr. 109). Plaintiff was hospitalized at the Perea Clinic from May 6 to July 2, 1969, where a final diagnosis of sacrolumbar sprain, lumbar herniated nucleus pulposus, and left sciatica was rendered (Tr. 100). In October 1969, Dr. Joseph Brinz, a neurological surgeon, examined plaintiff diagnosing spasm of the paravertebral muscles, limitation of trunk movements, marked muscular weakness of the left lower extremity above all in flexing and extending his foot. He also diagnosed bilateral hypolgesia at L4–5 and S1–2 level (Tr. 82). Plaintiff was hospitalized again from October 6 to October 14, 1969 for further studies and treatment, resulting in a diagnosis of radicular syndrome (Tr. 83). On the basis of the above medical evidence, plaintiff was declared disabled as of March 10, 1969. Said evidence should not have been reconsidered by the Administrative Law Judge in determining whether a disability still existed as of August 31, 1971.

This Court in Benito Marrero-Pedroza v. Secretary of Health, Education and Welfare, 1974, 382 F.Supp. 916, interpreted this pertinent regulation in this case [Title 20 C.F.R., Section 404.1539 (a)(1)] as follows:

"Under said regulation, the Appeals Council is not to review all the medical evidence to determine whether a disability exists; the plaintiff herein had already been deemed disabled as of August 10, 1968 and the medical evidence used to support that decision may not be reconsidered once the Secretary's determination is considered final."

It is clear from the decision of the Administistative Law Judge that he did not follow this directive. In reaching the conclusion that the record lacks objective clinical or laboratory findings, he emphasized what he termed as two unusual circumstances, both of which arose from physical examinations performed in March and October 1969, i. e. right after the accident which caused the disability (Tr. 13–14).

 This court in order to comply with the above mentioned regulation, must, therefore, limit its review to the evidence which throws light on whether the plaintiff was disabled on August 31, 1971. In so doing, this Court must also remember that this burden is on the Secretary to show that the claimant is able to work. Such was the holding in Benito Pedroza v. Secretary of

Health, Education and Welfare, supra, where this Court stated:

"The duty of the Appeals Council under 20 C.F.R., Section 404.1539(a)(1), is to determine, based on medical evidence, whether a claimant's disability has ceased, whether the impairment is no longer of such severity as to prevent him from engaging in any substantial gainful activity. The burden is on the Secretary to show the claimant is able to work, and the medical evidence must run in a positive vein. To hold that the medical evidence need only show that claimant is not incapable of work is to shift the burden of proof in termination cases unto shoulders ill-equipped to carry it and where it does not belong."

■ The medical evidence that the Administrative Law Judge alleged could be used to support a conclusion that plaintiff was no longer disabled was Dr. Asdrubal Arzola's orthopedic evaluation of the plaintiff on August 25, 1971. This physician, who only examined plaintiff once, diagnosed his condition as *chronic* lumbosacral strain. He also reported that the plaintiff walked leaning heavily on a cane and limping grossly to the left; that he refused to squat, stand, or walk on toes and heels; that lateral and backward bending was restricted *at least* 50%; that straight leg raising was reported possible to 80 degrees bilaterally with pain referred to the back; that this pain persisted even when the knees were flexed; and that plaintiff must avoid heavy lifting or working in a stooped position (Tr. 117–118).

This Court holds that this medical evidence, because it does not run in a positive vein, does not satisfy the burden of proof placed on the Secretary in termination cases. This evidence does not show that plaintiff is able to once again engage in substantial gainful activity.

This error becomes more poignant when the Court considers the other medical evidence on record which bears on whether plaintiff was no longer disabled. Dr. Hernandez, a general practitioner, who treated the plaintiff for 9 months, concluded on June 22, 1971, that plaintiff was unable to work because he was suffering from insufficient circulation and atrophy.

■■ The Court will now review the relevant non-medical evidence on record, which consists of the testimony taken at the hearing from the vocational expert. From his testimony, it is important to note that he was limited to answering fragmentary hypothetical questions. Said questions never included all of the relevant evidence on rceord, and since the evidence in the record was not contradictory, but differed only in terms of the extent and severity of the alleged ailments, such a question was not only possible, but desirable. See McCormick on Evidence, Section 14 at 32 (2d ed. 1972). This fact greatly detracts from the value of his testimony especially in view of the different conclusions reached by the vocational expert when asked hypothetical question based on different evidence on record.

■ Further, in concluding that plaintiff was able to work the vocational expert used the following language: "Departing from this premise that means that the claimant has a sprain in the muscular part, essentially in the lumbo-sacral region that bothers him *greatly,* it bothers him to make the movements, but that there is no physiological reason except the pain he feels for not (sic) being able to make those movements". (Tr. 39) (emphasis added). This language illustrates two errors committed: First, the wrong legal standard was applied by the vocational expert, since it has been held that under the Social Security Act a person is not compelled to work where to do so subjects him to great pain.

Butler v. Flemming, 5 Cir., 288 F.2d 591 (1961). Second, this evidence can hardly be considered to run in a positive vein, and therefore, it does not satisfy the burden of proof needed in termination cases, where the Secretary needs to show that claimant is able to work. Marrero-Pedroza v. Secretary of Health, Education and Welfare, supra.

■ A second reversible error was committed by the Secretary in holding that there exists work in the national economy which plaintiff can perform. From a review of the record it is clear that the Administrative Law Judge did not consider whether plaintiff would be employed as a result of the diminishment of his productivity due to his physical condition. It has been held that the Secretary in determining disability must consider claimant's degree of efficiency in performing the work which claimant can theoretically perform. Caraballo v. Secretary of Health, Education and Welfare, Civil No. 885–68; Rodriguez v. Secretary of Health, Education and Welfare, 355 F.Supp. 304.

During the hearing, the following question was made to the vocational expert regarding plaintiff's chances for employment due to the diminishment of his productivity:

"Representative: I think that an employer, now coming down to earth, will not employ a person he knows with a record from State Insurance that cannot bend, that has a thirty percent of I don't know what (referring to 30% loss of general physiological function), that can't walk great distances, that has to be sitted, that would be the less practicable employed by an employer?

A: Look, lawyer, I answered a hypothetical question of Licenciado Ang-lade and now you are describing a series of conditions that are not contained in that hypothetical premise.

Judge: The colleague can also make hypothetical questions.

Vocational Expert: That's clear but I wish to clearly and definitely establish under what base was that he made the question.

Judge: Yes, the colleague made it as a hypothetical question. You answer it.

Vocational Expert: I have just said that if all of the presumptions of the gentleman with the previous condition it is obvious that *he could not be employed for that or anything else."* (Tr. 51) (emphasis added).

■ From this exchange two things are clear. First, that in answering the hypothetical questions on which the Administrative Judge based his conclusions that plaintiff could perform jobs in the furniture making and shoe industry (Tr. 15), the vocational expert did not consider the effect that plaintiff's degree of efficiency may have on his chances for employment. Second, that when plaintiff's chances for employment were considered by the vocational expert, he concluded that plaintiff was not employable at all due to the diminishment of his productivity. The Court, therefore, holds that the conclusion that there exists work in the national economy which plaintiff could perform, is not supported by substantial evidence.

In accordance with the foregoing, the Court holds that the decision of the Secretary is not supported by substantial evidence in the record. Reversed and remanded for proceedings consistent with the views expressed herein.

It is so ordered.