Alfredo FEBO AGOSTO, Plaintiff,

v.

SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant.

Civ. No. 74–524.

United States District Court,
D. Puerto Rico.

March 14, 1977.

Gabriel A. García Rosario, Puerto Rico Legal Services, Inc., Hato Rey, P.R., for plaintiff.

Julio Morales Sánchez, U.S. Atty., San Juan, P.R., for defendant.

## OPINION AND ORDER

PESQUERA, District Judge.

This is an action brought by plaintiff pursuant to Section 205(g) of the Social Security Act (hereinafter referred to as the Act), 42 U.S.C. § 405(g), to obtain judicial review of a final decision by the Secretary of Health, Education and Welfare (hereinafter referred to as the Secretary) denying his claim for disability insurance benefits.

The issue in this case is whether the Secretary's determination to deny plaintiff's claim is supported by substantial evidence on the record considered as a whole. The Secretary based his decision on the fact that plaintiff did not meet the necessary burden of proof to find him disabled within the meaning of the Act. 42 U.S.C. §§ 416(i) and 423(d).

Plaintiff was born on March 20, 1927, and has completed six grades of grammar school. He has worked as a: dipper in metal industry, chromer, carpenter, machine operator, and as a handyman. Plaintiff met the special earning requirements in October 1968, the alleged date of his disability onset, and continued to meet them through March 31, 1969, at which time his coverage expired for disability insurance purposes. Therefore, in order for plaintiff to be entitled for disability insurance benefits, the evidence on record must establish that he was under a disability, as defined in the Act, beginning on or before March 31, 1969.

From the documentary evidence on record it is clear that plaintiff has exhausted all the administrative remedies available under the Act and its Regulations. His only alternative being to seek judicial review.

The medical and non-medical evidence reveals that plaintiff met his initial burden of establishing that he suffered from impairments that precluded him from returning to his previous work. *Reyes Robles v. Finch*, 409 F.2d 84 (1 Cir. 1969). The administrative law judge came to the same conclusion when after considering the evidence presented at the hearing, stated in his findings that claimant was suffering from a chronic fibromyositis that limited his ability to perform heavy work endeavors because he was unable to perform work requiring frequent bending, lifting, stooping or carrying.

■ Once plaintiff has shown his inability to perform his previous work, then the Secretary has the burden of showing that claimant can engage in other forms of substantial gainful activity. *Meneses v. Secretary of Health, Education and Welfare,* 143 U.S.App.D.C. 81, 442 F.2d 803 (1971); *Armstrong v. Richardson,* 355 F.Supp. 130 (D.C., 1972); *Burgos v. Secretary of Health, Education and Welfare,* 355 F.Supp. 309 (D.C., 1973) The administrative law judge held that plaintiff was able to function in a satisfactory manner based on the testimony of the vocational expert, Dr. Albizu Miranda. Based on such testimony, the administrative law judge concluded:

"5. Considering the claimant's residual capacity and his vocational background, he was able to perform jobs which were present in significant numbers in the region where he lived, including work as a punch press operator of electrical appliances; dipper in the metal industry; furniture industry worker doing bench carpentry and windows and doors; a painter by brush or spray; and a sander and varnisher; electronics industry worker doing packing; and as a boot and shoe industry worker doing shoe pairing, packing, and as a cleaner." (Tr. 10)

■ To conclude that plaintiff was capable of engaging in substantial gainful activities, the administrative law judge in his evaluation of the evidence relied heavily on the fact that plaintiff had worked as a watchman for a dairy during his alleged period of disability.[1] The fact that a claimant engages in some form of work during his alleged period of disability may justify the conclusion that he is able to engage in substantial gainful activities notwithstanding the fact that he cannot return to his previous work. *De Nafo v. Finch,* 436 F.2d 737 (3 Cir., 1970). But there is sufficient and credible evidence on the record of this case to show that plaintiff's work as watchman was more an act of charity from his alleged employer, the owner of the dairy where he allegedly worked, than an actual employment. Plaintiff lived in a house within the boundaries of such dairy and his only activity was to "watch" that no person stole anything from the dairy. This job was performed by plaintiff from his own home and did not require him to walk around. He received no agreed salary but merely amounts of money given him by the owner as "help". Certainly this is not the type of work that can substantiate a claim that plaintiff had the ability to engage in substantial gainful activities. See *Rodriguez v. Secretary of Health, Education and Welfare,* 355 F.Supp. 306 (D.C., 1973).

Furthermore, the evidence on record reveals that there are special circumstances which demanded from the administrative law judge to further inquire as to plaintiff's mental state. This was necessary if all aspects of the claim were to be considered before making a determination as to plaintiff's claim of disability.

The "Report of Disability Interview" dated March 15, 1971, which is part of the record and was prepared by members of the Social Security Administration, shows that plaintiff's acute pain was accompanied by a noticeable nervous state. (Tr. 65) This mental condition was further corroborated by plaintiff's own testimony (Tr. 37), by his wife's testimony to the effect that it was mainly plaintiff's nervous condition that prevented him from either looking for a job or doing some work (Tr. 41), and also by his sister's testimony (Tr. 44).

With the above mentioned evidence already on record, when the administrative law judge asked the vocational expert to assume, hypothetically, the plaintiff's condition, no mention was made regarding his mental state.[2] And it was in the light of

---

1. "All the witnesses brought to the hearing on behalf of the claimant testified that he could not work, and they stated that he had been unemployed for several years, but on further questioning they all admitted that he worked for several months as a watchman after the expiration of his coverage for disability insurance purposes." (Tr. 9)

2. The administrative law judge asked:
"Taking into consideration the critical period involved in this case, that from 1968, the alleged date of onset of the impairment, and

the hypothesis given by the administrative law judge that the vocational expert gave his opinion as to the moderate work that plaintiff could perform.[3] This omission by the administrative law judge results in a failure to satisfy the test of whether a particular job is realistically within the physical *and mental* capabilities of a claimant, which means whether he can effectively perform the jobs on a similar level of continuity, stamina and efficiency as one who is not impaired to the same degree of severity. *Caraballo v. Secretary of Health, Education and Welfare,* 346 F.Supp. 93 (D.C., 1972); *Lebron v. Secretary of Health, Education and Welfare,* 370 F.Supp. 403 (D.C., 1974); *Timmerman v. Weinberger,* 510 F.2d 439 (8 Cir., 1975). Therefore, after considering the evidence on record, it is concluded that the Secretary failed to discharge his burden of producing evidence to show that in spite of his disabilities plaintiff could engage in other substantial gainful activity. *Gray v. Finch,* 427 F.2d 336 (6 Cir., 1970).

Furthermore, there were other circumstances, besides plaintiff's mental state, which demanded a further inquiry as to his capacity to perform the other jobs recommended by the vocational expert. Plaintiff's formal education consisted of only six grades of grammar school; and his family was receiving welfare aid in the amount of $97 a month, which was later reduced to $62 when they started receiving a $40 allotment from his son in the Army. These personal circumstances of an uneducated and indigent individual with a mental impairment that was not fully considered by the Secretary, and who was not assisted by counsel at the hearing, demanded a high degree of caution from the administrative law judge. *Alamo v. Richardson,* 355 F.Supp. 314 (D.C., 1972); *Roman v. Secretary of Health, Education and Welfare,* 355 F.Supp. 646 (D.C., 1972); *Lugo Camacho v. Secretary of Health, Education and Welfare,* Civil No. 76–363, February 17, 1977 (USDC PR) Such degree of caution was not exercised by the administrative law judge when he failed to further inquire about plaintiff's alleged mental impairment.

This case is therefore remanded to the Secretary with instructions to further inquire about plaintiff's mental condition. It is also ordered that after psychiatric examinations are made, plaintiff be given a hearing to determine if his condition (mental and physical) at the time he last met the insured status precluded him from engaging in the substantial gainful activities suggested by the vocational expert.

---

continuing through March 31, 1969, and assuming, hypothetically, that the claimant does have a chronic fibromyositis which affects his back and waist, plus some degenerative arthritis of the lumbar spine but he does have the ability to sit, stand, stoop and squat, and he has the complete utilization of his upper extremities. . . . In consideration of the claimant's age, education, and work background, in your opinion were there jobs applicable to the claimant either in Puerto Rico primarily, or secondarily within the United States during the critical period?" (Tr. 47–48)

3. "In the light of your hypothesis the claimant can sit—stand, sit, squat, and he can use his upper extremities. You have limited him only to light, sedentary, or medium work." (Tr. 48)